IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

KYLE ALCOMBRACK, a married individual, *Plaintiff/Appellant*,

*v.*

ROBERT CICCARELLI and JANE DOE CICCARELLI, husband and wife,
*Defendants/Appellees*.

No. 1 CA-CV 13-0148
FILED 12-3-2015

Appeal from the Superior Court in Maricopa County
No. CV2009-027538
The Honorable Katherine M. Cooper, Judge

**AFFIRMED**

COUNSEL

Breyer Law Offices, Phoenix
By Mark P. Breyer
*Counsel for Plaintiff/Appellant*

O'Connor & Campbell, PC, Tempe
By Michael R. Altaffer, J. Edward Doman, Jr.
*Counsel for Defendants/Appellees*

**OPINION**

Presiding Judge Samuel A. Thumma delivered the opinion of the Court, in which Judge Randall M. Howe joined. Judge Diane M. Johnsen dissented.

**T H U M M A**, Judge:

¶1        A couple defaulted on their obligations to repay a lender on a loan for a house they leased to a tenant. The lender then hired a company to inspect the house. The inspection company then hired a locksmith company to change the locks. The locksmith company then sent a locksmith to change the locks. Mistaking the locksmith for an intruder, the tenant shot and seriously injured the locksmith. The locksmith filed a negligence claim against the couple who defaulted on the loan. The superior court granted the couple summary judgment, finding the locksmith had not shown a cognizable duty. The locksmith now appeals. Because the locksmith has not shown the couple owed him a duty, the grant of summary judgment is affirmed.

## FACTS[1] AND PROCEDURAL HISTORY

¶2        In 2008, Robert and Dixie Ciccarelli leased a house in Phoenix to Jeffrey Harrison. By early 2009, the Ciccarellis had defaulted on a loan secured by the house and foreclosure had begun. The Ciccarellis did not tell Harrison of the foreclosure.

¶3        In late February 2009, a notice of trustee's sale issued. The beneficiaries of the deed of trust[2] then hired LPS Field Services, Inc., to inspect the house. LPS then hired Sentinel Field Services, Inc., a locksmith company. Sentinel then sent employee locksmith Kyle Alcombrack to change the locks at the house. Mistakenly thinking the house was vacant, Alcombrack drilled out the lock on the front door of the house. Mistakenly thinking the house was being broken into, Harrison shot at the door, seriously injuring Alcombrack.

¶4        Alcombrack sued the Ciccarellis, the beneficiaries of the deed of trust and LPS. Alcombrack alleged the Ciccarellis "had a duty to" him which they breached. More specifically, Alcombrack alleged the Ciccarellis created an unreasonably-dangerous condition by not telling Harrison the house was in foreclosure and that someone might inspect the house

---

[1] This court views the evidence and reasonable inferences in a light most favorable to the non-movant. *Lennar Corp. v. Transamerica Ins. Co.*, 227 Ariz. 238, 242 ¶ 7 (App. 2011).

[2] The operative pleading names JP Morgan Chase Bank, N.A., Washington Mutual Home Loans, Inc., and Washington Mutual Mortgage Securities Corporation.

"and/or change the locks." The Ciccarellis moved for summary judgment, arguing they owed no duty. After briefing and oral argument, the superior court granted the motion, finding Alcombrack was a licensee, the Ciccarellis did not owe Alcombrack a duty, the Ciccarellis did not owe a duty to tell Harrison about the foreclosure and, even if they owed such a duty to Harrison, "that duty did not extend to a duty to [Alcombrack] to protect him from" Harrison.

¶5          A jury later found Alcombrack sustained $849,026 in damages and that LPS was 34 percent at fault. Alcombrack reached a post-trial settlement with LPS and the beneficiaries of the deed of trust, and appealed the entry of summary judgment in favor of the Ciccarellis.[3] This court has jurisdiction over Alcombrack's timely appeal pursuant to the Arizona Constitution, Article 6, Section 9, and Arizona Revised Statutes (A.R.S.) section 12-2101(A)(1) (2015).[4]

## DISCUSSION

¶6          Although described in various ways, a plaintiff alleging an Arizona common law negligence claim must show: (1) a duty requiring the defendant to conform to a certain standard of care; (2) defendant's breach of that duty; (3) cause in fact; (4) legal cause; and (5) actual damages. *See Gipson v. Kasey*, 214 Ariz. 141, 143 ¶ 9 (2007); *Grafitti-Valenzuela ex rel. Grafitti v. City of Phoenix*, 216 Ariz. 454, 457, 460 ¶¶ 6, 20-21 (App. 2007). "The first element, whether a duty exists, is a matter of law for the court to decide." *Gipson,* 214 Ariz. at 143 ¶ 9; *accord Guerra v. State*, 237 Ariz. 183, 185 ¶ 7

---

[3] Having dismissed Alcombrack's claim against the Ciccarellis, the superior court correctly did not permit the jury to assess any fault to them. The Ciccarellis argue, without supporting authority, that by failing to appeal the judgment against LPS, Alcombrack waived his right to appeal as to the Ciccarellis. Because the grant of summary judgment in favor of the Ciccarellis was interlocutory, Alcombrack properly waited until after entry of final judgment to appeal. Having settled with LPS after the jury's verdict, Alcombrack had no reason to appeal as to LPS. Finally, the jury's allocation of fault to specified non-parties was a vehicle for determining the fault of the parties, and could not be introduced as evidence of liability in any action. *See* A.R.S. § 12-2506(B). Accordingly, Alcombrack did not waive his right to appeal as to the Ciccarellis.

[4] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

(2015). Absent duty, an action for negligence fails. *Gipson*, 214 Ariz. at 143 ¶ 11. The party claiming negligence has the burden to show a duty. *Id.* at 143 ¶ 9.

## I.  Alcombrack Has Not Shown A Duty Based On A Landowner-Licensee/Invitee Relationship.

**¶7**         After rejecting foreseeability as a factor in determining duty, *Gipson* observed that "[d]uties of care may arise from special relationships based on contract, family relations, or conduct undertaken by the defendant." *Id.* at 145 ¶ 18. *Gipson* cited the landowner-invitee relationship as a "categorical relationship [that] can give rise to a duty." *Id.* at 145 ¶ 19 (citing cases); *accord* Restatement (Second) of Torts (Restatement Second) §§ 333-50 (1965). Under a landowner-licensee/invitee relationship, however, a landowner not in possession of property owes no duty to a third party who is injured on the property. *See, e.g., Rendall v. Pioneer Hotel*, 71 Ariz. 10, 15-16 (1950) ("At common law, subject to certain exceptions not here material, the occupier or tenant and not the landlord was liable to a third person on the premises for injury caused by the condition or use of the demised premises."); *Clarke v. Edging*, 20 Ariz. App. 267, 272-73 (1973) (noting landlord generally not considered possessor for premises liability); Restatement Second § 356 cmt. a ("[I]t is the general rule that the lessor is not liable to the lessee, or to others on the land, for injuries occurring after the lessee has taken possession."). Accordingly, Alcombrack has not shown the Ciccarellis owed a relevant duty based on a landowner-licensee/invitee relationship, *see Clarke*, 20 Ariz. App. at 272-73, or based on contract or family relations, *see Gipson*, 214 Ariz. at 145 ¶ 18. That failure, however, does not end the inquiry. As *Gipson* recognized, even absent such relationships, a common law duty may arise based on "conduct undertaken by the defendant." 214 Ariz. at 145 ¶ 18.[5]

---

[5] The Dissent at ¶ 32 n.15 correctly notes that, had this incident occurred several years later, Alcombrack could have claimed the Ciccarellis had a duty to provide notice to Harrison under A.R.S. § 33-1331 (2013). That statute, enacted in 2013, does not apply here. *See* A.R.S. § 1-244. Moreover, a statutory duty enacted years after the incident is not relevant to whether Alcombrack has shown the Ciccarellis owed him a common law duty.

**II.** **Alcombrack Has Not Otherwise Shown The Ciccarellis Owed A Duty Relevant To His Claim.**

¶8        Alcombrack argues a duty arose when the Ciccarellis defaulted on their loan, thereby empowering the beneficiaries of the deed of trust to change the locks on the house.[6] The Ciccarellis counter that they had no duty to notify Harrison of the foreclosure and, even if they did, such a duty would not extend to third parties like Alcombrack.[7] Because no Arizona case resolves this issue, this court ordered supplemental briefing on whether Alcombrack preserved for appellate review an argument that the Ciccarellis owed a duty on any basis other than as an invitee or a licensee and, if so, the applicability of specified legal authorities to this case. In that supplemental briefing, Alcombrack argues a duty should be recognized under *La Raia v. Superior Court*, 150 Ariz. 118 (1986); *Maldonado v. Southern Pacific Transportation Co.*, 129 Ariz. 165 (App. 1981); Restatement Second §§ 321 and 322 and Restatement (Third) of Torts Liability for Physical and Emotional Harm (Restatement Third) §§ 7 and 39 (2010). The Ciccarellis counter that Alcombrack, in part, waived the application of these authorities and, in any event, has not shown a duty in this case. This court addresses these arguments in turn, beginning with the case law and Restatement Second § 322.

**A.** **Nether *La Raia*, *Maldonado* Nor Restatement Second § 322 Imposed A Duty On The Ciccarellis.**

¶9        In *La Raia*, a landlord applied a pesticide that caused the tenant to become ill. 150 Ariz. at 120. When the tenant asked for a list of the chemicals in the pesticide, the landlord provided a list that "omitted all toxic items" and, having been told by medical professionals that "none of the chemicals was toxic," the tenant "reentered her apartment only to become more seriously ill." *Id.* The tenant sued the landlord and, on appeal,

---

[6] The primary reason to change the locks was, presumably, to keep anyone who had a key from accessing the house, including the Ciccarellis.

[7] The parties dispute whether Alcombrack's claim is based on misfeasance or nonfeasance. *See, e.g., Bogue v. Better-Bilt Aluminum Co.*, 179 Ariz. 22, 34 (App. 1994) (stating the "general rule is that absent a special relationship . . . no duty exists to take affirmative precaution for the aid or protection of another"); Restatement Second § 314 cmt. c ("one human being, seeing a fellow man in dire peril, is under no legal obligation to aid him"). Given the resolution of duty, the court need not resolve the misfeasance or nonfeasance dispute.

the Arizona Supreme Court concluded plaintiff should have been allowed to amend her complaint. *Id.* at 123. In coming to that conclusion, *La Raia* noted *Maldonado* applied Restatement Second § 322

> to a situation in which it was alleged that defendant negligently jerked a train car, causing plaintiff to fall under the wheels and become severely injured. Defendant then refused to aid plaintiff and may have hindered those who came to his assistance. The court of appeals found that in the absence of prior case law, it would apply Restatement [Second] § 322. That situation is closely analogous to the one before us. In the present case, we need say only that because defendant poisoned plaintiff it had a duty to minimize the resulting harm after it discovered what had occurred.
>
> Thus, there is no need to recognize a new tort. Having caused or contributed to plaintiff's poisoning, defendant was under a duty to act reasonably to mitigate the resulting harm.

150 Ariz. at 122. In that distinguishable context -- where the plaintiff sought to hold defendant liable for its failure to mitigate harm *after* defendant's tortious conduct physically injured plaintiff -- *La Raia* expressly adopted Restatement Second § 322, which states:

> If the actor knows or has reason to know that by his conduct, whether tortious or innocent, he has caused such bodily harm to another as to make him helpless and in danger of further harm, the actor is under a duty to exercise reasonable care to prevent such further harm.

150 Ariz. at 122 (quoting Restatement Second § 322); *accord Maldonado*, 129 Ariz. at 169 (applying Restatement Second § 322 and noting, where plaintiff "received his injuries from an instrumentality under" defendant's control, "this is sufficient to impose a duty to render reasonable aid and assistance; a duty for the breach of which [defendant] is liable for *additional* injuries suffered") (emphasis added).

¶10         Given *La Raia*, as well as *Maldonado*, Restatement Second § 322 clearly is the law in Arizona. It is equally clear, however, that Restatement

6

Second § 322 does not apply to Alcombrack's claim. Alcombrack does not assert that the Ciccarellis owed and then breached a duty *after* he was shot. Instead, Alcombrack claims the Ciccarellis owed a duty *before* he was shot. Moreover, the analysis in *La Raia,* including its construction of *Maldonado,* addresses a defendant's duty to mitigate further harm after the defendant's actions have caused physical injury to the plaintiff in violation of a duty, not whether the defendant owed plaintiff a duty in the first instance. 150 Ariz. at 122. *La Raia* made this distinction plain by noting that, although plaintiff claimed spoliation when the landlord provided incorrect information about the chemicals that injured her, "[i]n failing to provide [correct information], and intentionally providing false information, defendant did not spoil the evidence, it caused a *new or further injury* to the plaintiff." *Id*. Thus, *La Raia*, *Maldonado* and the Restatement Second § 322 do not apply to Alcombrack's claim against the Ciccarellis.

### B. Alcombrack Has Not Shown That Restatement Third § 7 Should Be Adopted In This Case.

¶11          It is clear that, in briefing before the superior court, Alcombrack raised the issue of whether Restatement Third § 7 should be adopted as the law of Arizona, an argument that court rejected. The question is whether this court should adopt, for the first time in Arizona, a standard that "[a]n actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm." Restatement Third § 7(a). For several reasons, Alcombrack has not shown that Restatement Third § 7(a) should be adopted here.

¶12          First, Restatement Third § 7(a) is significantly broader than Restatement Second § 315,[8] the latter of which "has been adopted in Arizona and applied in support of no-duty determinations absent a special

---

[8]

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives to the other a right of protection.

Restatement Second § 315.

7

relationship." *Delci v. Gutierrez Trucking Co.*, 229 Ariz. 333, 337-38 ¶16 (App. 2012) (citing *Fedie v. Travelodge Int'l, Inc.*, 162 Ariz. 263, 265 (App. 1989) and *Davis v. Mangelsdorf,* 138 Ariz. 207, 208 (App. 1983)). Alcombrack does not allege that the Ciccarellis owed a duty here based on Restatement Second § 315.

¶13        Second, dicta in *Ontiveros v. Borak*, 136 Ariz. 500 (1983) does not show that Arizona adopted the standard later reflected in Restatement Third § 7(a). As the Dissent notes at ¶ 31, *Ontiveros* quoted an Alaska case stating "'every person is under a duty to avoid creating situations which pose an unreasonable risk of harm to others'" in abolishing the common-law doctrine that tavern owners were not liable for off-premises injuries to third parties caused by the acts of an intoxicated patron. 136 Ariz. at 509 (quoting *Nazareno v. Urie*, 638 P.2d 671, 674 (Alaska 1981)). This statement was not essential to the holding in *Ontiveros* but, as *Gipson* noted, this dicta could be interpreted as being consistent with the Restatement Third § 7(a) approach to duty. 214 Ariz. at 146 ¶ 24 n.4. *Gipson*, however, found it was "not necessary . . . to frame the issue" that broadly, holding instead that "Arizona statutes themselves provide a sufficient basis for a duty of care." 214 Ariz. at 146 ¶ 24. The *Gipson* concurrence noted that adopting Restatement Third § 7(a) would represent a significant change to Arizona duty law, described as "a different conceptual approach." *Id.* at 147-48 (Hurwitz, J., concurring). Moreover, the rationale for the holding in *Ontiveros* "was much more narrowly based on the relation of the licensed supplier of liquor and his patron requiring the licensee to 'take affirmative measures to control or avoid increasing the danger from the conduct of others,'" a relationship not present here. *Delci*, 229 Ariz. at 338 ¶ 17 (quoting *Ontiveros*, 136 Ariz. at 508–09); *accord Diaz v. Phx. Lubrication Serv., Inc.*, 224 Ariz. 335, 340 ¶ 21 (App. 2010) (noting *Gipson* did not decide whether a common law duty existed and rejecting duty argument under *Ontiveros* and Restatement Third § 7 because defendant did not create the risk to plaintiff).

¶14        A third and final point comes from the lengthy but persuasive conclusion in *Delci* that

> adoption of the Third Restatement would do more than just modify existing Arizona negligence law; it would substantially change Arizona's longstanding conceptual approach to negligence law by effectively eliminating duty as one of the required elements of a negligence action. *See Gipson*, 214 Ariz. at 147–48, ¶¶ 33–40 [] (Justice Hurwitz, concurring) . . . ; *compare*

> *Wertheim v. Pima County*, 211 Ariz. 422, 426, ¶ 17 [] (App. 2005) ("We do not understand the law to be that one owes a duty of reasonable care at all times to all people under all circumstances.") []; *Bloxham* [*v. Glock Inc.*], 203 Ariz. at 275, ¶ 8 [(App. 2002)] (same). The Third Restatement approach significantly lessens the role of the court as a legal arbiter of whether society should recognize the existence of a duty in particular categories of cases; for this reason, adopting the Third Restatement would increase the expense of litigation. Although restricting the dismissal of negligence actions for lack of duty may be thought desirable as more protective of a litigant's jury-trial right, such a fundamental change in the common law requires an evaluation of competing public policies that is more appropriately addressed to the Arizona Supreme Court.

229 Ariz. at 338 ¶18 (citations omitted); *accord Hafner v. Beck*, 185 Ariz. 389, 391 (App. 1995) ("We do not understand the law to be that one owes a duty of reasonable care at all times to all people under all circumstances. The common law has not been stretched that far yet, and we envision considerable danger in doing so in this context.").[9] For these reasons, Alcombrack has not shown that this court should adopt Restatement Third § 7(a) in this case.

### C.     Alcombrack Has Not Shown That Restatement Third § 39 Or Restatement Second § 321 Should Be Adopted In This Case.

¶15     Alcombrack did not cite Restatement Third § 39 or Restatement Second § 321 in briefing before the superior court. Nor did Alcombrack rely on these provisions in his opening or reply briefs on appeal. Accordingly, Alcombrack has waived any argument they should apply here. *See Continental Lighting & Contracting, Inc. v. Premier Grading & Utilities, LLC*, 227 Ariz. 382, 386 ¶ 12 (App. 2011); *Schurgin v. Amfac Elec. Distribution Corp.*, 182 Ariz. 187, 190 (App. 1995); *see also State v. Moody*, 208

---

[9] *Delci* added that "[t]o our knowledge, only two state courts have expressly adopted" Restatement Third § 7(a), a statement that remains true today. 229 Ariz. at 338 ¶18 n.6 (citing Iowa and Nebraska cases).

Ariz. 424, 452 ¶ 101 n.9 (2004) (noting court usually does not consider arguments even when raised in reply brief on appeal). Even on the merits, however, Alcombrack has not shown these provisions should be adopted in this case.

¶16        "An actor whose conduct has not created a risk of physical [] harm to another has no duty of care to the other unless a court determines that one of the affirmative duties in §§ 38-44 is applicable." Restatement Third § 37. Alcombrack argues this court should adopt the following standard: "When an actor's prior conduct, even though not tortious, creates a continuing risk of physical harm of a type characteristic of the conduct, the actor has a duty to exercise reasonable care to prevent or minimize the harm." Restatement Third § 39. No Arizona decision has adopted Restatement Third § 39. Indeed, the only published decision to cite the provision is in a partial dissent in *Huck v. Wyeth, Inc.*, 850 N.W.2d 353, 390 (Iowa 2014) (Hecht, J., concurring in part and dissenting in part).

¶17        Restatement Third § 39 "imposes a duty that might be subsumed under the general duty of reasonable care in § 7." Restatement Third § 39 cmt. d. If subsumed in Restatement Third § 7, Restatement Third § 39 would not impose a duty here for the same reasons discussed above in concluding Alcombrack has not demonstrated that this court should adopt Restatement Third § 7(a). If not subsumed in Restatement Third § 7, meaning Restatement Third § 39 sets forth a different duty, the question is whether Arizona law should recognize that different duty.

¶18        Restatement Third § 39 is based on Restatement Second §§ 321 and 322. *See* Restatement Third § 39 cmt. a ("[t]his Section encompasses both § 321 and § 322 from the Second Restatement and eliminates the requirement of helplessness contained in § 322"). To the extent Restatement Third § 39 is based on Restatement Second § 322, as discussed above, Restatement Second § 322 does not apply to Alcombrack's claim. Restatement Second § 321, by contrast, states that

> (1) If the actor does an act, and subsequently realizes or should realize that it has created an unreasonable risk of causing physical harm to another, he is under a duty to exercise reasonable care to prevent the risk from taking effect.

> (2) The rule stated in Subsection (1) applies even though at the time of the act the actor has no reason to believe that it will involve such a risk.

Restatement Second § 321. The Restatement Third, however, "replac[ed] and supersed[ed]" the Second Restatement. *See* Restatement Third Introduction. Moreover, Alcombrack has not shown that Arizona should adopt Restatement Second § 321 even if the Restatement Third had not replaced and superseded the Restatement Second.

¶19　　　Although promulgated 50 years ago, Arizona has never adopted Restatement Second § 321. Indeed, the only Arizona case to mention the provision did so in passing in holding summary judgment should have been granted because the defendant "owed no duty to [plaintiff] to protect him from an assault by strangers." *Parish v. Truman*, 124 Ariz. 228, 229-30 (App. 1979). The fact that Arizona has not adopted Restatement Second § 321 in the five decades after it was promulgated is telling. Looking at how the provision has been received in other states also is telling.

¶20　　　The Dissent at ¶ 32 n.14 correctly states that Restatement Second § 321 has been adopted in at least a few other jurisdictions. As noted by the Minnesota Supreme Court, however, Restatement Second § 321 "has received heavy criticism from multiple jurisdictions," including "for vagueness and over-inclusiveness." *Domagala v. Rolland*, 805 N.W.2d 14, 25 (Minn. 2011). *Domagala* rejected the provision, noting "significant public policy concerns," adding "few state supreme courts have favorably cited" the provision in majority opinions and "[s]everal courts have expressed disfavor for the Restatement by explicitly rejecting section 321, declining to extend its terms, or expressly distinguishing its provisions on factual grounds." *Id.* at 25 n.2, 26 (citing cases). Nearly a decade earlier, the Connecticut Supreme Court characterized Restatement Second § 321 as "creat[ing] a duty based on foreseeability alone, without any consideration of the public policy concerns that we have concluded are an essential component of our traditional duty analysis," noting "[w]e have not adopted § 321 of the Restatement (Second) in the past and, even if it were applicable, we would decline to do so in the present case." *Murillo v. Seymour Ambulance Ass'n, Inc.*, 823 A.2d 1202, 1207 (Conn. 2003) (cited with approval on other grounds in *Guerra*, 237 Ariz. at 188 ¶ 22). This criticism of § 321 as focusing "on foreseeability alone" is particularly significant, given *Gipson*'s holding "that foreseeability is not a factor to be considered by courts when making determinations of duty." 214 Ariz. at 144 ¶ 15. Thus, Restatement Second § 321 (and Restatement Third § 39 to the extent it is based on § 321)

is inconsistent with current Arizona law.[10] For these reasons, Alcombrack has not shown that this court should adopt Restatement Third § 39 or Restatement Second § 321 in this case.

**CONCLUSION**

**¶21**        Alcombrack has not shown that the superior court erred in granting summary judgment in favor of the Ciccarellis on Alcombrack's claim against them.[11] Accordingly, the superior court's grant of summary judgment in favor of the Ciccarellis on Alcombrack's claim against them is affirmed.

---

[10] The Dissent at ¶ 29 correctly states that, "[a]bsent controlling Arizona law to the contrary, an Arizona court generally follows the Restatement." It is equally true, however, that Arizona "do[es] not follow the Restatement blindly, . . . and will come to a contrary conclusion if Arizona law suggests otherwise." *Powers v. Taser Intern., Inc.*, 217 Ariz. 398, 403 ¶ 19 (App. 2007) (citation omitted); *accord Small v. Ellis*, 90 Ariz. 194, 199 (1961); *Reed v. Real Detective Pub. Co.*, 63 Ariz. 294, 303 (1945); *Cannon v. Dunn*, 145 Ariz. 115, 116 (App. 1985). Because Arizona law does suggest otherwise here, Alcombrack has not shown that they should be adopted in this case.

[11] Given this conclusion, this court need not address the Ciccarellis' arguments that the trustee lacked the power under Arizona law to change the locks after their default or that Harrison's action was a superseding intervening cause. *See* Dissent ¶¶ 34 & 35.

**J O H N S E N,** Judge, dissenting:

**¶22**         I respectfully dissent.  My view is that under duty principles already established in Arizona, if the Ciccarellis' default authorized the lender to enter the home and change the locks, they owed a duty to take reasonable steps to prevent resulting personal injury to the locksmith the lender sent to do that.

**¶23**         As the Majority states, although a landlord who has leased the entirety of the property usually has no duty *as landowner* to one who comes onto the land, that does not mean the landowner necessarily owes no other duty to the entrant.  It only means that no "categorical relationship" imposes such a duty.  *See supra* ¶ 7.  As our supreme court has held, in the absence of any such categorical relationship, an actor can *by his conduct* create another relationship that may impose on him a duty of care.  *Gipson v. Kasey*, 214 Ariz. 141, 145, ¶ 18 (2007).

**¶24**         Alcombrack argues that such a duty arose when the Ciccarellis defaulted on their loan, thereby empowering their lender to enter the home and change the locks.  Under his theory, the Ciccarellis are liable for injuries caused when their tenant, a bail bondsman who wore a bullet-proof vest for protection, mistook Alcombrack for a home invader and shot him.

**¶25**         Normally, as the Ciccarellis contend in their "nonfeasance" argument, one has no duty to protect another who is at risk of harm.  *See La Raia v. Superior Court*, 150 Ariz. 118, 121 (1986) ("common law generally refused to impose a duty upon one person to give aid to another, no matter how serious the peril to the other and no matter how trifling the burden of coming to the rescue"); *see* Restatement Second § 314 cmt. c ("one human being, seeing a fellow man in dire peril, is under no legal obligation to aid him").  This is the normal rule "irrespective of the gravity of the danger to which the other is subjected and the insignificance of the trouble, effort, or expense of giving him aid or protection."  *Id.*

**¶26**         But the rule may be different when the actor has created the risk of harm.  "In general, every person is under a duty to avoid *creating* situations which pose an unreasonable risk of harm to others."  *Nunez v. Prof'l Transit Mgmt. of Tucson, Inc.*, 229 Ariz. 117, 121, ¶ 17 (2012) (quotation omitted).  When someone has done something "and subsequently realizes or should realize that it has created an unreasonable risk of causing physical harm to another, he is under a duty to exercise reasonable care to prevent the risk from taking effect."  Restatement Second § 321(1) (1965).

**¶27** In *La Raia*, our supreme court adopted this principle in holding that an actor who has done something that renders another helpless and in danger has a duty to prevent further harm to the other. In that case, a landlord inadvertently used a pesticide that poisoned a tenant, then lied about the chemical it had used, causing the tenant's medical problems to go untreated. The supreme court analyzed whether, having endangered the tenant in the first place, the landlord could be sued for failing "to minimize the resulting harm after it discovered what had occurred." 150 Ariz. at 122. The court adopted Restatement (Second) of Torts § 322 (1965):

> If the actor knows or has reason to know that by his conduct, whether tortious or innocent, he has caused such bodily harm to another as to make him helpless and in danger of further harm, the actor is under a duty to exercise reasonable care to prevent such further harm.

The applicable principle, the *La Raia* court said, is "where the defendant created the danger the law imposes a duty to do what is reasonable to extricate the plaintiff." *Id.* (citing *Maldonado v. Southern Pac. Transp. Co.*, 129 Ariz. 165 (App. 1981)) (applying Restatement Second § 322).

**¶28** Restatement (Second) of Torts § 321 (1965) imposes the same duty in a situation in which an actor has created a risk of physical harm to another:

> (1) If the actor does an act, and subsequently realizes or should realize that it has created an unreasonable risk of causing physical harm to another, he is under a duty to exercise reasonable care to prevent the risk from taking effect.
>
> (2) The rule stated in Subsection (1) applies even though at the time of the act the actor has no reason to believe that it will involve such a risk.

The duty imposed by this section applies regardless of "whether the original act is tortious or innocent." Restatement Second § 321, cmt a.

**¶29** Absent controlling Arizona law to the contrary, an Arizona court generally follows the Restatement. *See In re Krohn*, 203 Ariz. 205, 210, ¶ 18 (2002). Neither the Ciccarellis nor, in my view, the Majority, offer a

compelling reason why this court should not follow that general rule and adopt Restatement Second § 321 in this case.[12]

¶30        In the first place, § 321 follows from the same principle that underlies § 322: Both provide that, as *La Raia* put it, when an actor has "created the danger" to another, the actor has a duty to act reasonably to prevent harm. Section 322 applies when an actor has caused bodily harm to another who has been rendered helpless; in that situation, the actor must exercise care to prevent further harm. Section 321 applies when an actor realizes that he has created an unreasonable risk of bodily harm; in that situation, the actor must exercise care to prevent the risk from taking effect.

¶31        Moreover, both § 322 and § 321 are grounded in a principle our supreme court announced more than 30 years ago: "[E]very person is under a duty to avoid creating situations which pose an unreasonable risk of harm to others." *Ontiveros v. Borak*, 136 Ariz. 500, 509 (1983). The Majority notes that no Arizona case has adopted § 321 even though it was promulgated more than 50 years ago. But given that no Arizona case has rejected the provision over that same period, the most that can be said about the omission is that it simply hasn't come up before now.[13]

¶32        The Majority cites cases from elsewhere criticizing § 321 and concludes that provision is impermissibly based on foreseeability. *Supra* ¶ 20; *see Gipson*, 214 Ariz. at 144, ¶ 15. But the Connecticut case that is the

---

[12] The Majority believes Alcombrack waived any argument in favor of Restatement Second § 321 by failing to cite that provision in his opening or reply briefs. Supra ¶ 15. Instead, Alcombrack urged this court to adopt Restatement Third § 7, which the Majority believes to be a wide analytical leap from existing Arizona common law. We sought and received supplemental briefing about whether to adopt Restatement Second § 321, a 50-year-old provision that is considerably more limited in scope than Restatement Third § 7. Under the circumstances, if we decline to adopt Restatement Third § 7, I do not believe waiver precludes us from considering whether to adopt Restatement Second § 321 instead.

[13] The Ciccarellis argue this court rejected Restatement Second § 321 in *Parish v. Truman*, 124 Ariz. 228 (App. 1979). But we did not reject Section 321 in that case; we determined it was not relevant because there was no evidence the defendant knew of the risk he allegedly had created to the plaintiff. *Id.* at 230.

centerpiece of that discussion, *Murillo*, merely held that public policy may limit the scope of a duty otherwise imposed under § 321.[14]  Arizona courts likewise have recognized that public policy may limit application of general duty principles in some circumstances.  Under these authorities, however, public policy does not bar every application of the general duty rule.  In *Guerra v. State*, 237 Ariz. 183 (2015), for example, our supreme court noted that although prior Arizona decisions had applied Restatement (Second) of Torts § 323 (duty of reasonable care of one who renders certain services to another), for reasons of public policy, the court would not apply that rule to law enforcement personnel when they notify next-of-kin.  237 Ariz. at 187, ¶ 20 ("policy considerations may militate against finding a duty in certain contexts").  *See Espinoza v. Schulenburg*, 212 Ariz. 215, 217, ¶¶ 9, 11 (2006) (expressly adopting "rescue doctrine" as stated in Restatement (Third) of Torts § 32 but holding that, for policy reasons, that duty rule did not apply to public safety employees injured on the job).  There is no public policy asserted for why the duty rule stated in § 321 should not apply here.[15]

**¶33**        In the superior court and again on appeal, Alcombrack argues Restatement Third § 7 imposed a duty on the Ciccarellis to take steps to protect someone the lender might send to change the locks on the home.  As in *Gipson* and the other cases the Majority cites, however, this court need not decide here whether to adopt Restatement Third § 7.  As applied to the

---

[14] At issue in *Murillo* was a claim by a woman who fainted in a hospital emergency room after she saw medical personnel struggling to insert an IV into her sister's arm.  823 A.2d at 1204.  It is no surprise that the court in that case held the emergency medical technician and nurse that the bystander sued had no duty to the plaintiff.  The court held that, as a matter of public policy, medical personnel should be encouraged to devote their full attention to their patients, not to bystanders.  *Id.* at 1206.  In any event, and for the record, other jurisdictions have adopted § 321.  *See Parnell v. Peak Oilfield Service Co.*, 174 P.3d 757 (Alaska 2007); *Courtney v. Courtney*, 413 S.E.2d 418 (W. Va. 1991).

[15] *See* A.R.S. § 33-1331 (2015) (requiring landlord to give tenant notice of foreclosure and allowing a tenant who does not receive such notice to sue for damages).  That statute was adopted in 2013 and so was not in effect at the time relevant here, but it decisively rebuts any possible contention that public policy precludes application of § 321 to a landlord whose loan documents allow the lender to enter the property and change the locks upon default.

allegations of the complaint in this case, Restatement Second § 321 imposed a duty on the Ciccarellis to act reasonably to prevent physical harm to Alcombrack.

¶34　　Alcombrack argues the duty at issue arose when the Ciccarellis defaulted on their loan because their deed of trust expressly authorized the lender upon default to send someone like him to change the locks.[16] The Ciccarellis, however, argue they cannot be responsible because the trustee lacked the power under Arizona law to change the locks on the home after their default. Citing Restatement (Third) of Property (Mortgages) § 4.1 (1997), the Ciccarellis contend the provision in the deed of trust upon which Alcombrack relies is unenforceable under Arizona law. The relevant Restatement provision states:

> (a) A mortgage creates only a security interest in real estate and confers no right to possession of that real estate on the mortgagee.

> (b) Any agreement, whether in a mortgage or not, that grants the mortgagee, as mortgagee, the right to possession in the future is unenforceable, except as provided in § 3.1(c).

Restatement (Third) of Property (Mortgages) § 4.1.[17]

¶35　　Although, as stated, Arizona courts usually follow the Restatement, we do not do so when it conflicts with a relevant statute or case law. *See In re Estate of Reynolds*, 235 Ariz. 80, 83, ¶ 12 (App. 2014). Under Arizona law, the parties to a mortgage may by contract agree to

---

[16] The deed of trust provided that upon the borrower's breach, "Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including . . . securing and/or repairing the Property." It further stated, "Securing the Property includes, but is not limited to, entering the Property to make repairs [and] change locks." Whether it was "reasonable or appropriate" for the lender to change the locks on the home under the circumstances presented here is not before us.

[17] Section 3.1(c) of Restatement (Third) of Property (Mortgages), which restricts the authority of a mortgagee to limit the mortgagor's power to redeem, is not relevant here.

allow the mortgagee a right of possession. *See* A.R.S. § 33-703 (2015) ("A mortgage is a lien upon everything that would pass by a grant of the property, but does not entitle the mortgagee to possession of the property *unless authorized by the express terms of the mortgage*.") (emphasis added). Although § 33-703 on its face applies to mortgages rather than deeds of trust, there is no apparent reason why the principle underlying the statute likewise would not apply to deeds of trust. For that reason, I would decline to follow Restatement (Third) of Property (Mortgages) § 4.1 and hold instead that a trustee is not barred as a matter of law from entering the property when the deed of trust permits it to do so.

**¶36**      For these reasons, I would reverse the summary judgment and remand for a trial on Alcombrack's negligence claim against the Ciccarellis. At that point, the jury would be tasked to decide whether, applying the appropriate principles of law, the Ciccarellis breached a duty to Alcombrack and whether they should be liable for his injuries.



Ruth A. Willingham · Clerk of the Court
FILED: ama