IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

ERNEST V. QUIROZ and MARY QUIROZ, husband and wife,
*Plaintiffs/Appellants*,

*v.*

ALCOA INC., et al., *Defendants/Appellees*.

No. 1 CA-CV 15-0083
FILED 9-20-2016

---

Appeal from the Superior Court in Maricopa County
No. CV2013-009160
The Honorable Sally Schneider Duncan, Judge

**AFFIRMED**

---

COUNSEL

Ely Bettini Ulman & Rosenblatt, Phoenix
By Burton Rosenblatt
*Co-Counsel for Plaintiffs/Appellants*

Water Kraus & Paul, El Segundo, CA
By Paul C. Cook, Michael B. Gurien
*Co-Counsel for Plaintiffs/Appellants*

Gordon & Rees LLP, Phoenix
By Molly C. Machold, Mark Tuvim
*Co-Counsel for Defendants/Appellees*

Hawkins Parnell Thackston & Young LLP, Dallas, TX
By Edward M. Slaughter
*Co-Counsel for Defendants/Appellees*

Righi Fitch Law Group PLLC, Phoenix
By Elizabeth Savoini Fitch
*Counsel for Amicus Curiae Coalition for Litigation Justice, Inc.*

---

**OPINION**

Judge Jon W. Thompson delivered the opinion of the Court, in which Presiding Judge Patricia A. Orozco and Judge Peter B. Swann joined.

---

**T H O M P S O N**, Judge:

**¶1** We are asked to decide as a matter of first impression whether an employer owes a duty of care to the child of an employee who contracts mesothelioma from asbestos brought home on the employee's work clothes. These cases are commonly known as "take-home exposure" cases. *See, e.g.,* Mark A. Behrens, What's New in Asbestos Litigation?, 28 Rev. Litig. 501, 546 (2009). We find no duty of care arises and, therefore, affirm the trial court's ruling.

### FACTUAL AND PROCEDURAL BACKGROUND

**¶2** Because Appellants challenge a grant of summary judgment against them, we recite the facts in the light most favorable to them. *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12, 69 P.3d 7, 11 (2003).

**¶3** Ernest V. Quiroz (Dr. Quiroz) lived in his father's house from 1952 to 1966. During that time, his father worked for Reynolds Metal Company (Reynolds). Dr. Quiroz left home to attend school in California in 1966, and continued to reside in California until 1976. Dr. Quiroz resided in Michigan from 1976 until his death in 2014.

**¶4** Appellants allege Dr. Quiroz was exposed to asbestos on his father's work clothes during the years he lived in his father's house. Dr. Quiroz was diagnosed with mesothelioma, a form of cancer frequently associated with asbestos exposure, in 2013. Appellants alleged Reynolds was negligent because

> [Dr. Quiroz's] father . . . had been exposed, on numerous occasions, to asbestos-containing products and machinery requiring or calling for the use of asbestos or asbestos-containing products or products which caused the release of

2

respirable asbestos fibers . . . and, in so doing, his clothing, tools, car, body and general surroundings were contaminated with great quantities of asbestos fibers. [Dr. Quiroz] breathed these asbestos fibers as a result of direct and indirect contact with his father's clothes, tools, car and general surroundings.

Appellants amended their complaint to allege wrongful death when Dr. Quiroz passed away in October 2014.

¶5         Reynolds moved for summary judgment, arguing that it did not owe Dr. Quiroz a duty of care. The trial court granted the motion, finding Reynolds "had no duty to Plaintiffs as a matter of law." Appellants timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) § 12-2101(A)(1) (2016).

## DISCUSSION

¶6         To establish a negligence claim, a plaintiff must prove four elements: (1) a duty requiring the defendant to conform to a certain standard of care, (2) the defendant's breach of that standard, (3) a causal connection between the defendant's conduct and the resulting injury, and (4) actual damages. *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 9, 150 P.3d 228, 230 (2007). "The first element, whether a duty exists, is a matter of law for the court to decide." *Id.* We review the trial court's duty ruling de novo. *Bloxham v. Glock, Inc.,* 203 Ariz. 271, 274, ¶ 6, 53 P.2d 196, 199 (App. 2002).

¶7         Duty is defined as an "obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." *Gipson*, 214 Ariz. at 143, ¶ 10, 150 P.3d at 230 (quoting *Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352, 354, 706 P.2d 364, 366 (1985)). Whether a defendant owes the plaintiff a duty of care is a "threshold issue;" absent a duty of care, there can be no viable claim for negligence. *Id.* at 143, ¶ 11, 150 P.3d at 230.

¶8         Whether a defendant owes a plaintiff a duty of care does not turn on the foreseeability of injury. *Barkhurst v. Kingsmen of Route 66, Inc.*, 234 Ariz. 470, 472, ¶ 10, 323 P.3d 753, 755 (App. 2014). In determining whether a duty exists, we do not undertake a fact-specific analysis, nor do we look at the parties' specific actions. *Boisson v. Ariz. Bd. of Regents*, 236 Ariz. 619, 623, ¶ 11, 343 P.3d 931, 935 (App. 2015). A duty "may arise from the relationship between the parties or, alternatively, from public policy considerations." *Id.* at 622, ¶ 7, 343 P.3d at 934. We consider both possible duty sources below.

I.     **There Was No Special or Categorical Relationship Between Dr. Quiroz and Reynolds.**

**¶9**          A duty of care may arise from a special relationship based on contract, family relations, or conduct undertaken by the defendant, or may be based on categorical relationships recognized by the common law, such as landowner-invitee. *Delci v. Gutierrez Trucking Co.*, 229 Ariz. 333, 336, ¶ 12, 275 P.3d 632, 635 (App. 2012).

**¶10**          Appellants do not contend Reynolds and Dr. Quiroz had either a special or categorical relationship.[1]    Appellants instead argue Reynolds owed a duty to avoid creating hazardous conditions on its property that would cause injury to persons off the property under Restatement (Third) of Torts § 54(a) and Restatement (Second) of Torts § 371.    Generally, we will follow the Restatement if we deem it good legal authority, but will reject it where "Arizona law suggests otherwise." *Powers v. Taser Int'l, Inc.*, 217 Ariz. 398, 403, ¶ 19, 174 P.3d 777, 782 (App. 2007). Here, Arizona law does suggest otherwise, as noted below.

A.     **Restatement (Third) § 54.**

**¶11**          Restatement (Third) § 54(a) imposes a duty of reasonable care on possessors of land "for artificial conditions or conduct on the land that poses a risk of physical harm to persons or property not on the land."  The parties cite no Arizona case law interpreting § 54, nor are we aware of any.

**¶12**          According to the official comments, § 54 is a "special application of [Restatement (Third)] § 7."  Restatement (Third) § 54, cmt. b. Restatement (Third) § 7 states, in relevant part, that "[a]n actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm," and imposes a general duty of reasonable care on all persons.  Restatement (Third) § 7(a); *see also Gipson*, 214 Ariz. at 147, ¶ 34, 150 P.3d at 234 (Hurwitz, J., concurring) (noting that, under § 7, courts would "view the duty of reasonable care as the norm").

---

[1]     Other courts that have considered "take-home exposure" cases have found no special relationship between an employer and its employees' family members. *See, e.g., Gillen v. Boeing Co.*, 40 F. Supp. 3d 534, 538 (E.D. Pa. 2014) (finding that an employer and an employee's spouse who contracted mesothelioma due to take-home exposure were "legal strangers" under the law of negligence); *Adams v. Owens-Illinois, Inc.*, 705 A.2d 58, 66 (Md. Ct. App. 1998) (finding that employer and employee's spouse were "strangers" in a take-home exposure case).

¶13        We have previously declined to adopt the general duty of care proposed by § 7, finding that doing so would

> substantially change Arizona's longstanding conceptual approach to negligence law by effectively eliminating duty as one of the required elements of a negligence action. . . . The Third Restatement approach significantly lessens the role of the court as a legal arbiter of whether society should recognize the existence of a duty in particular categories of cases; for this reason, adopting the Third Restatement would increase the expense of litigation.

*Delci*, 229 Ariz. at 338, ¶ 18, 275 P.3d at 637; *see Alcombrack v. Ciccarelli*, 238 Ariz. 538, 542, ¶ 11, 363 P.3d 698, 702 (App. 2015). We see no reason to adopt § 54's "special application" of that same duty. *See Hafner v. Beck*, 185 Ariz. 389, 391, 916 P.2d 1105, 1107 (App. 1995) ("We do not understand the law to be that one owes a duty of reasonable care at all times to all people under all circumstances.").

¶14        Appellants also point to *Ontiveros v. Borak*, where our supreme court stated in dicta that "every person is under a duty to avoid creating situations which pose an unreasonable risk of harm to others." 136 Ariz. 500, 509, 667 P.2d 200, 209 (1983). We distinguished this statement in *Delci*, noting that the *Ontiveros* holding hinged on "the relation of the licensed supplier of liquor and his patron requiring the licensee to take affirmative measures to control or avoid increasing the danger from the conduct of others," a relationship not present either in *Delci* or in this case. *See Delci*, 229 Ariz. at 338, ¶ 17, 275 P.3d at 637 (internal quotation marks omitted). We also distinguished the same statement in *Alcombrack*, finding that it was not an implicit endorsement of Restatement (Third) § 7. 238 Ariz. at 542, ¶ 13, 363 P.3d at 702.

¶15        For these reasons, we decline Appellants' invitation to apply Restatement (Third) § 54 in this case. *See Delci*, 229 Ariz. at 338, ¶ 18, 275 P.3d at 637 (stating that adoption of the Restatement (Third) "requires an evaluation of competing public policies that is more appropriately addressed to the Arizona Supreme Court.").

### B.        Restatement (Second) § 371.

¶16        Restatement (Second) § 371 states:

> A possessor of land is subject to liability for physical harm to others outside of the land caused by an activity carried on by

him thereon *which he realizes or should realize* will involve an unreasonable risk of physical harm to them under the same conditions as though the activity were carried on at a neutral place.

(Emphasis added.)  The parties cite no Arizona case law interpreting § 371, but the official comments state that a possessor will not be liable under this section "unless he should not only recognize the risk involved in his act, but should also realize that the risk is unreasonable." *Id.*, cmt. b.

**¶17**        Section 371 thus hinges on foreseeability, which is not part of the duty analysis under Arizona law. *Barkhurst*, 234 Ariz. at 472, ¶ 10, 323 P.3d at 755.  We thus decline to apply Restatement (Second) § 371.

### C.      Reynolds Did Not Owe Dr. Quiroz a Duty as a Landowner.

**¶18**        Appellants next argue Reynolds owed a duty of care as a landowner to prevent "off-premises injuries caused by dangerous on-premises conditions."  A landowner owes invitees a duty to provide reasonably safe premises and reasonably safe means of ingress and egress. *Ritchie v. Costello*, 238 Ariz. 51, 54, ¶ 10, 356 P.3d 337, 340 (App. 2015).  A landowner's duty to licensees generally terminates when the licensee leaves the landowner's property. *Wickham v. Hopkins*, 226 Ariz. 468, 472, ¶ 17, 250 P.3d 245, 249 (App. 2011); *but see Udy v. Calvary Corp.*, 162 Ariz. 7, 14, 780 P.2d 1055, 1061 (1989) (holding landlord may owe a duty to his tenant for dangers beyond the premises).

**¶19**        Appellants do not contend Dr. Quiroz was Reynolds' invitee or licensee at any time, or that he suffered injury while on, entering, or leaving Reynolds' property.  They instead allege that Dr. Quiroz "was exposed to asbestos . . . carried into [his] childhood home on the clothing of his father."  Reynolds thus did not owe Dr. Quiroz a duty of care in its capacity as a landowner.

**¶20**        Appellants also contend Arizona recognized a landowner's liability for "the uncontrolled release of asbestos . . . carried by the wind onto neighboring property" in *Burns v. Jaquays Mining Corp.*, 156 Ariz. 375, 752 P.2d 28 (App. 1987).  They further contend that "[t]here is no meaningful distinction to be drawn between toxins that are . . . borne by the wind, and toxins escaping the property via soiled employees' work clothing."  Appellants misread *Burns*, which did not address duty.  The *Burns* Court instead determined that subclinical asbestos-related injuries were not sufficient to constitute actual loss.  156 Ariz. at 376, 752 P.2d at 29.  Moreover, the *Burns* Court only reversed summary judgment on the

plaintiffs' nuisance and medical surveillance claims, not their negligence claim. *Id.* at 381, 752 P.2d at 34. As Appellants do not assert a nuisance or medical surveillance claim, *Burns* is not dispositive on any issue in this case.

¶21 Finally, Appellants contend that "whether Dr. Quiroz's injury was foreseeable to Reynolds, and whether Reynolds acted unreasonably in failing to prevent that foreseeable injury, were issues for the trier of fact." That issue is not before us because we do not consider foreseeability in determining whether a duty of care exists. *Barkhurst*, 234 Ariz. at 472, ¶ 10, 323 P.3d at 755.

## II. Public Policy Considerations.

¶22 A duty of care can also originate in public policy arising from statutes or common law. *US Airways, Inc. v. Qwest Corp.*, 238 Ariz. 413, 422, ¶ 33, 361 P.3d 942, 951 (App. 2015). Absent either, we typically will not find a duty based in public policy. *See Gilbert Tuscany Lender, LLC v. Wells Fargo Bank*, 232 Ariz. 598, 602, ¶¶ 19-20, 307 P.3d 1025, 1029 (App. 2013) (noting that prior public policy duty cases were "supported by a state statute or a Restatement section" and declining to impose a duty where no statute or Restatement section applied); *Estate of Hernandez v. Ariz. Bd. of Regents*, 177 Ariz. 244, 253, 866 P.2d 1330, 1339 (1994) (a regulation may give rise to a tort duty premised on public policy where it "is designed to protect the class of persons, in which the plaintiff is included, against the risk of the type of harm which has in fact occurred as a result of its violation"); *Wickham*, 226 Ariz. at 473, ¶¶ 24-27, 250 P.3d at 250; *Diaz v. Phoenix Lubrication Serv., Inc.*, 224 Ariz. 335, 341, ¶ 25, 230 P.3d 718, 724 (App. 2010) (declining to find a duty of care where the plaintiffs "neither cite[d] nor suggest[ed] a statute that might create a duty" and the common law did not create a duty).

¶23 Appellants cite no statutory or common law basis for the duty they seek to impose on Reynolds beyond the two Restatement sections discussed above. They instead raise arguments that largely track the following list of public policy factors identified in *Bloxham*:

> [T]he reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability.

203 Ariz. at 275, ¶ 9, 53 P.2d at 200 (finding no regulatory violation which might support a duty of care) (citations omitted). We address each of Appellants' public policy arguments below.

### A.   Reasonable Expectations of the Parties and Society.

¶24       Appellants argue that imposing a duty of care on Reynolds would meet the reasonable expectations of the parties and of society and that "take-home exposure" cases are not an unreasonable extension of *Burns*, discussed above. We disagree for two reasons.

¶25       First, *Burns* is not dispositive for the reasons set forth above. Second, Appellants do not offer support for their argument that "[a]ny property owner could reasonably expect that a lack of due care in handling toxins on its premises, resulting in off-premises injury, could lead to liability." A finding of a duty of care must come before considering whether Reynolds exercised due care. *See Estate of Maudsley v. Meta Serv., Inc.*, 227 Ariz. 430, 435, ¶ 15, 258 P.3d 248, 253 (App. 2011) (stating "determinations of duty should not be based on a 'fact-specific analysis' of the relationship between the parties"); *Ritchie v. Krasner*, 221 Ariz. 288, 298, ¶ 27, 211 P.3d 1272, 1282 (App. 2009) ("It is essential for both courts and parties not to conflate the legal determination of duty and the factual determinations of standard of care, breach, and causation.").

### B.   Proliferation of Claims.

¶26       Appellants also argue that recognizing a duty of care would not open the proverbial "floodgates of litigation" or create an unmanageable class of potential plaintiffs. As support, they cite a handful of statistics indicating that only a small percentage of mesothelioma victims are "homemakers."

¶27       Setting aside the fact that Dr. Quiroz was not a "homemaker," Appellants do not suggest any framework under which the duty of care they seek to impose would be owed to only "homemakers" and not "potential plaintiffs who never visited the employers' premises but came into contact with . . . asbestos-tainted clothing in a taxicab, a grocery store, a dry-cleaning establishment, a convenience store, or a laundromat." *Van Fossen v. MidAm. Energy Co.*, 777 N.W.2d 689, 699 (Iowa 2009); *see also In re Eighth Judicial Dist. Asbestos Litig.*, 815 N.Y.S.2d 815, 820-21 (N.Y. Sup. Ct. 2006) (declining to impose a duty of care in a take-home exposure case in part because "[t]he court must be cautious of creating an indeterminate class of potential plaintiffs").

¶28       Appellants' answer is to argue that non-family member plaintiffs would have difficulty proving the remaining elements of negligence. Specifically, they contend that harm to these plaintiffs would be "arguably unforeseeable . . . to the employer/premises owner," whereas

harm to "a close family member" such as Dr. Quiroz is not. Appellants thus again ask us to find a duty of care based in part on foreseeability of harm, which *Gipson* foreclosed.[2] *Ritchie*, 221 Ariz. at 298, ¶ 27, 211 P.3d at 1282.

### C.  Unlimited or "Insurer-Like" Liability.

**¶29**      Appellants also argue, without citation to authority, that recognizing a duty would not create unlimited, insurer-like liability. But other courts have found that imposing a duty of care in take-home exposure cases would "exacerbate the current asbestos litigation crisis." *Certified Question*, 740 N.W.2d at 219 (internal quotation marks omitted); *see also Gillen*, 40 F. Supp. 3d at 540 ("As other courts have recognized, without a limiting principle, liability for take-home exposure would essentially be infinite.").

**¶30**      We share this concern because, as noted above, Appellants offer no way to limit the duty they seek either to employees' family members or to asbestos exposure. Absent these constraints, any company that made or used a potentially hazardous substance could be liable to anyone who ever came into contact with an employee who arguably could have carried said hazardous substance offsite. Such a dramatic expansion of liability would not be compatible with public policy. *Van Fossen*, 777 N.W.2d at 699.

### D.  New Channels of Liability.

**¶31**      Appellants next argue that recognizing a duty of care would not create new channels of liability, again relying on Restatement (Second) § 371. As discussed above, § 371 imposes a duty of care based on foreseeability of harm. It, therefore, would open new channels of liability contrary to established Arizona law. *Barkhurst*, 234 Ariz. at 472, ¶ 10, 323 P.3d at 755.

---

2       Appellants also offer no method for limiting the duty they seek as to asbestos exposure as opposed to exposure to other potentially harmful substances that could be brought home on an employee's clothing. We note other courts that have considered take-home exposure cases have struggled with these issues. *See, e.g.*, Gillen, 40 F. Supp. 3d at 540; Adams, 705 A.2d at 66; In re Certified Question from the Fourteenth District Court of Appeals of Texas, 740 N.W.2d 206, 217 (Mich. 2007); *In re New York City Asbestos Litig.*, 840 N.E.2d 115, 122 (N.Y. 2005).

### E.    The Connection between Reynolds' Allegedly Negligent Conduct and Dr. Quiroz's Harm.

¶32    Finally, Appellants argue that our public policy analysis should focus on "the direct connection between [Reynolds'] *conduct* and the physical injury suffered by Dr. Quiroz." However, any such connection would go to causation, not duty. *See Gipson*, 214 Ariz. at 143, ¶ 9, 150 P.3d at 230 (stating that one of the elements of a negligence claim is "a causal connection between the defendant's conduct and the resulting injury"). Whether Reynolds' alleged conduct caused Dr. Quiroz's injury is not before us.

¶33    Having reviewed these policy considerations, the potential drawbacks of recognizing a duty of care in take-home exposure cases outweigh any potential benefits. *See Guerra v. State*, 237 Ariz. 183, 187, ¶ 20, 348 P.3d 423, 427 (2015). We decline to impose a duty of care based on public policy.

### III.    Those States That Have Recognized a Duty of Care in Take-Home Exposure Cases Did So Based on Foreseeability of Harm.

¶34    Appellants also point to a handful of out-of-state authorities that have recognized a duty of care in take-home exposure cases.[3] These authorities are distinguishable because each court focused on the foreseeability of harm.

¶35    In *Satterfield*, the Tennessee Supreme Court found Alcoa owed a duty of care to an employee's daughter who contracted mesothelioma as a result of regular contact with her father's work clothes. 266 S.W.3d at 353. Unlike Arizona law, however, Tennessee law recognizes a general duty "to refrain from engaging in affirmative acts that a reasonable person should recognize as involving an unreasonable risk of causing an invasion of an interest of another" or acts "which involve[] an unreasonable risk of harm to another." *Id.* at 355 (quoting Restatement (Second) §§ 284, 302, internal quotation marks omitted). The application of this duty hinges on whether a person's actions "create unreasonable and

---

[3]    *Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092 (Ill. 2012); *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347 (Tenn. 2008); *Chaisson v. Avondale Indus., Inc.*, 947 So.2d 171 (La. Ct. App. 2006); *Zimko v. Am. Cyanamid*, 905 So.2d 465 (La. Ct. App. 2005); *Olivo v. Owens-Illinois, Inc.*, 895 A.2d 1143 (N.J. 2006); *Rochon v. Saberhagen Holdings, Inc.*, 140 Wash. App. 1008, 2007 WL 2325214 (Wash. Ct. App. Aug. 13, 2007).

foreseeable risks of harm to others." *Id.* Indeed, "the foreseeability factor has taken on paramount importance in Tennessee," *id.* at 366, while foreseeability plays no role in Arizona's duty analysis, *Gipson*, 214 Ariz. at 144, ¶ 15, 150 P.3d at 231.

¶36 In *Olivo*, the New Jersey Supreme Court found Exxon Mobil owed a duty of care to an independent contractor's spouse who contracted mesothelioma "as a result of her continuous exposure to asbestos dust . . . introduced into the home on [her husband's] work clothes." 895 A.2d at 1146. But foreseeability is "a crucial element in determining whether imposition of a duty on an alleged tortfeasor is appropriate." *Id.* at 1148 (internal quotation marks omitted). In fact, the *Olivo* court expressly found Exxon Mobil "owed a duty to spouses handling the workers' unprotected work clothing *based on the foreseeable risk of exposure* from asbestos borne home on contaminated clothing." *Id.* at 1149-50 (emphasis added).

¶37 The remaining cases Appellants cite are much the same in that foreseeability of harm was a key factor in each court's duty analysis. *See Simpkins*, 965 N.E.2d at 1098 ("The first factor we look to in determining whether a duty of care existed in this situation is whether the risk of harm to the plaintiff was reasonably foreseeable. *Though foreseeability is not the only factor we consider, it is a necessary factor to finding a duty.*") (internal citations omitted, emphasis added); *Chaisson*, 947 So.2d at 183 (stating that Louisiana law "*relie[s] heavily on foreseeability* when finding a duty") (emphasis added); *Zimko*, 905 So.2d at 483 ("[W]e find American Cyanamid's duty is the general duty to act reasonably *in view of the foreseeable risks of danger* to household members of its employees resulting from exposure to asbestos fibers carried home on its employee's clothing, person, or personal effects.") (emphasis added); *Rochon*, 140 Wash. App. 1008, 2007 WL 2325214, at *2 ("A risk is 'unreasonable,' and thus a party has a duty to prevent resulting harm, only if a reasonable person *would have foreseen* the risk.") (emphasis added).

¶38 Those courts that do not focus on foreseeability have declined to find a duty of care in take-home exposure cases.[4] In *CSX Transportation, Inc. v. Williams*, the Georgia Supreme Court declined "to extend on the basis

---

[4] Other cases that have rejected a duty of care in take-home exposure cases and not cited elsewhere in this decision include *Price v. E.I. Dupont de Nemours & Co.*, 26 A.3d 162 (Del. 2011), *Riedel v. ICI Americas, Inc.*, 968 A.2d 17 (Del. 2009), *Nelson v. Aurora Equip. Co.*, 909 N.E.2d 931, 939 (Ill. App. Ct. 2009), *Boley v. Goodyear Tire & Rubber Co.*, 929 N.E.2d 448, 453 (Ohio 2010), and *Alcoa, Inc. v. Behringer*, 235 S.W.3d 456 (Tex. Ct. App. 2007).

of foreseeability the employer's duty beyond the workplace to encompass all who might come into contact with an employee or an employee's clothing outside the workplace." 608 S.E.2d 208, 210 (Ga. 2005). Likewise, the New York Court of Appeals distinguished *Olivo*, discussed above, because "New Jersey, unlike New York, relies heavily on foreseeability in its duty analysis." *New York City Asbestos Litig.*, 840 N.E.2d at 122; *see also Certified Question*, 740 N.W.2d at 216 ("Michigan, like New York, relies more on the relationship between the parties than foreseeability of harm when determining whether a duty exists. For this reason, we do not find *Olivo* persuasive.").

**¶39** The Georgia, New York, and Michigan duty analyses more closely approximate our own, as set forth in *Gipson*. We therefore find Reynolds owed no duty of care to Dr. Quiroz for alleged take-home asbestos exposure.

## CONCLUSION

**¶40** We affirm the trial court's ruling granting summary judgment to Reynolds.



AMY M. WOOD • Clerk of the Court
FILED: AA