# Illinois Official Reports

## Appellate Court

---

### *Ledeaux v. Motorola, Inc.*, 2018 IL App (1st) 161345

---

| | |
|---|---|
| Appellate Court Caption | MARCUS LEDEAUX, a Disabled Person, by His Co-Guardians and Conservators, LISA LEDEAUX, MARK LEDEAUX, and LYNDRA LEDEAUX; ELIZABETH BRYAN, a Minor, by Her Father and Next Friend, GEORGE BRYAN; HUNTER CONSTANT; TANYA CORTEZ; SARINA FINZER, a Minor, by Her Father and Next Friend, HARLAN FINZER; JOHN GALL; RAY SOLAREZ; GABRIEL ERNESTO TREVINO; DIANA HILL; FRANK MARTINEZ VALDEZ III; JENNIFER BERNARD; ROSE LYKO; ENRIQUE DANIEL MARIN ARBALLO; JASON COAR; MITCHELL SMITH; MONICA ELIAS; EDUARDO ROMERO, a Minor, by His Father and Next Friend, HECTOR ROMERO; MEG FERNANDEZ; JEREMY HARDISON, a Minor, by His Father and Next Friend, ERIC HARDISON; SERENITY MILLER, a Minor, by Her Mother and Next Friend, MISTY EVERTS; ROBERT EVAN TORREZ, a Minor, by His Mother and Next Friend, JANAN ADAMS; ELIZABETH MENSING; LISA LEDEAUX; MARK LEDEAUX; GEORGE BRYAN; CYNTHIA BRYAN; BRANDON CONSTANT; WENDY CONSTANT; LEILANI CORTEZ; JOE CORTEZ; HARLAN FINZER; SARAH FINZER; MARY MARK; ROSA MARIN-ARBALLO; HENRY ARBALLO; HECTOR ROMERO; ALICIA ROMERO; JOSIE SOLAREZ; ARMANDO FERNANDEZ; SHACHICO FERNANDEZ; ERIC HARDISON; CHERYL HARDISON; VINCENT MILLER; MISTY EVERTS; ROBERT TORREZ; EVELYN TORREZ; STEVEN ADAMS; JANAN ADAMS; and ANGELA MENSING, Plaintiffs, v. MOTOROLA, INC., Defendant-Appellee (SARINA FINZER, a Minor, by Her Father and Next Friend, HARLAN FINZER; HARLAN FINZER; SARAH FINZER; JEREMY HARDISON, a Minor, by His Father and Next Friend, ERIC HARDISON; ERIC HARDISON; and CHERYL HARDISON, Plaintiffs-Appellants). |
| District & No. | First District, Second Division<br>Docket No. 1-16-1345 |

Filed                 February 20, 2018

Decision Under        Appeal from the Circuit Court of Cook County, No. 10-L-8503; the
Review                 Hon. Irwin J. Solganick, Judge, presiding.

Judgment            Affirmed in part and reversed in part.
                     Cause remanded.

Counsel on           Cooney & Conway, of Chicago (Kevin J. Conway and Michael J.
Appeal                Lubeck, of counsel), and Law Offices of Michael T. Reagan, of
                     Ottawa (Michael T. Reagan, of counsel), for appellants.

                     Mayer Brown LLP, of Chicago (Michele Odorizzi and Daniel L. Ring,
                     of counsel), for appellee.

Panel               JUSTICE MASON delivered the judgment of the court, with opinion.
                     Presiding Justice Neville and Justice Hyman concurred in the
                     judgment and opinion.

**OPINION**

¶ 1      Plaintiffs Sarina Finzer and Jeremy Hardison were born with severe birth defects that they asserted were sustained *in utero* and caused by their fathers' exposure to toxic chemical products and substances during their employment at Motorola, Inc.'s (Motorola), semiconductor manufacturing facilities in Arizona and Texas, respectively. Seeking damages for their birth defects, Sarina through her parents, Harlan and Sarah Finzer, and Jeremy through his parents, Eric and Cheryl Hardison, sued Motorola for (1) negligence, (2) strict liability, (3) breach of an assumed duty, (4) willful and wanton misconduct, and (5) loss of child consortium relating to the children's birth defects and impairment to the parent-child relationship. Finding that plaintiffs could prove no set of facts that would entitle them to relief, the trial court dismissed plaintiffs' complaint pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2010)).

¶ 2      Plaintiffs appeal the dismissal, asserting that the trial court erred in finding that (1) the exclusive remedy provision of the respective state workers' compensation laws barred their claims, (2) no duty was owed to a not-yet conceived child, and (3) proximate cause could not be established as a matter of law, given that the fathers did not sustain an injury. Plaintiffs also claim that the trial court erred in dismissing the willful and wanton misconduct count and the

Finzers' loss of child consortium count, which depended on pleading a viable cause of action for negligence. Construing the allegations in the complaint in the light most favorable to plaintiffs, we reverse the trial court's dismissal of plaintiffs' complaint. We find that plaintiffs properly pled a cause of action for negligence and willful and wanton misconduct under Arizona and Texas law and loss of child consortium under Arizona law, and we remand for further proceedings consistent with this opinion.

¶ 3                                BACKGROUND

¶ 4     Plaintiffs' case is one of eight separate personal injury cases filed against Motorola, relating to severe birth defects in children of former Motorola employees who were exposed to toxic chemical products and substances that Motorola provided or approved of while working in semiconductor manufacturing "clean rooms," where semiconductor wafers, microchips, and boards were manufactured. A "clean room" is a controlled environment used for manufacturing high technology products. *Lucent Technologies, Inc. v. Mid-West Electronics, Inc.*, 49 S.W.3d 236, 239 n.2 (Mo. Ct. App. 2001). Clean rooms are designed to prevent airborne contaminants from contacting semiconductor components during the manufacturing process. *Motorola Solutions, Inc. v. Zurich Insurance Co.*, 2015 IL App (1st) 131529, ¶ 6.

¶ 5     Motorola is headquartered in Illinois and has semiconductor manufacturing plants in Phoenix, Mesa, Scottsdale, Tempe, and Chandler, Arizona, as well as a facility in Austin, Texas.

¶ 6     Sarina was born on April 5, 1999. From approximately 1997 until 1998, her father Harlan worked at Motorola's semiconductor manufacturing plant in Mesa, Arizona.[1] Jeremy was born on April 4, 2000. Jeremy's father Eric worked at Motorola's semiconductor manufacturing plant in Austin, Texas, from 1991 to 2001. Both Sarina and Jeremy were born with birth defects: Sarina has a clubfoot, and Jeremy has an underdeveloped jaw. Both alleged these birth defects resulted from their fathers' repeated and prolonged exposure to toxic chemicals in Motorola's clean rooms.

¶ 7     On July 23, 2010, plaintiffs filed a combined complaint against Motorola, asserting counts for (1) negligence, (2) abnormally dangerous and ultra hazardous activity, (3) willful and wanton misconduct, and (4) loss of child consortium. In the complaint, plaintiffs alleged that the fathers sustained injuries to their reproductive systems as a result of their exposure to toxic chemicals, which in turn caused minor plaintiffs' injuries, *i.e.*, their severe birth defects. Plaintiffs amended their complaint a month later to include an additional plaintiff.

¶ 8     After plaintiffs filed their amended complaint, a Delaware trial court decided *Peters v. Texas Instruments Inc.*, C.A. No. 10-C-06-043 JRJ, 2011 WL 4686518 (Del. Super. Ct. Sept. 30, 2011), *aff'd by memorandum*, 58 A.3d 414 (Del. 2013). *Peters* is an unpublished Delaware state court decision that applied Texas substantive law. *Id.* The minor plaintiff in *Peters* brought a similar negligence action, asserting that his father's exposure to toxic chemicals in the workplace injured his father's reproductive system (his sperm) leading to the minor's birth defects. *Id.* at *1. The employer defendant argued that the child's negligence claim was barred

---

[1]Harlan ended his employment with Motorola in March 1998, 13 months before Sarina's birth. Whether Harlan's exposure to toxic chemicals while working in a clean room had a lasting effect on his reproductive system after he left Motorola's employment presents a factual question we need not determine here.

by the exclusive remedy provision of Texas workers' compensation law because the plaintiff alleged an injury to his father's reproductive system, and the child's injury was entirely dependent on the injury to his father. *Id.* at *3. The court dismissed the action finding that the exclusive remedy provision barred the child's negligence claim because the validity of his claim depended on the validity of his father's claim, and his father's claim was subject to the exclusive remedy provided under workers' compensation laws. *Id.* at *6.

¶ 9    After filing their second amended complaint and evidently attempting to plead around *Peters*, plaintiffs filed a third amended complaint, which no longer alleged an injury to the fathers' reproductive systems. In fact, plaintiffs pled that the fathers did not sustain "a direct injury or cause of action as a result of their exposure to some or all of the aforesaid chemical products and substances, but make[ ] only a claim for loss of consortium which is wholly derivative of the direct cause of action of his/her injured child."

¶ 10    In response to plaintiffs' third amended complaint, Motorola moved to dismiss pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2010)).[2] Motorola asserted, in part, that despite alleging no direct injury to their fathers, the children's injuries were nonetheless derivative of a work-related injury to their fathers' reproductive systems, and a claim under the workers' compensation law was the children's exclusive remedy. To the extent that minor plaintiffs did not allege an injury to their fathers, Motorola asserted that they could not establish proximate cause because the children were never present in the clean rooms and, thus, were never directly exposed to the toxic chemicals. Motorola's position was that the complaint failed to establish causation because although plaintiffs asserted that the minors were injured as a result of their fathers' workplace exposure, they pled no injury to their fathers and failed to explain how the exposure was the proximate cause of the children's injury absent an injury to their fathers. Motorola further alleged that because the exposure to the toxic chemicals allegedly occurred preconception, plaintiffs were asserting a preconception tort, which is not recognized under either Arizona or Texas law.

¶ 11    After Motorola filed its motion, plaintiffs filed a fourth amended complaint, which pled counts for (1) negligence, (2) willful and wanton misconduct, (3) strict liability, (4) breach of an assumed duty, and (5) loss of child consortium. In the fourth amended complaint, plaintiffs alleged that Motorola had (1) a duty of care to its employees and their offspring to provide a safe workplace and (2) a duty to warn its employees of the potential for injury to their offspring, but failed to do so and, instead, provided its employees with misleading information regarding the safety of working in clean rooms. Minor plaintiffs' causation theory was that the toxic chemicals entered their fathers' reproductive systems and temporarily remained there leading to either (1) some temporary alteration of the sperm or (2) the sperm carrying the toxic chemicals to the mother's egg, which, in turn, resulted in their birth defects. Other than the transitory effect on their fathers' reproductive system, minor plaintiffs asserted that the chemical exposure did not otherwise result in any diagnosable or permanent injury to their fathers. Motorola stood on its motion to dismiss in response to the fourth amended complaint.

¶ 12    After a hearing on Motorola's motion to dismiss, the trial court granted the dismissal with prejudice, finding that there were no well-pled facts that supported any of plaintiffs' causes of action. The trial court denied plaintiffs' oral motion to amend on the basis that no amendment

---

[2]Motorola filed a separate motion to dismiss as to Sarina's and Jeremy's claims, but similar grounds for dismissal were raised in each motion.

could change the result. The trial court's order included Rule 304(a) language finding no just reason to delay enforcement or appeal. Ill. S. Ct. R. 304(a) (eff. Feb. 6, 2010). Plaintiffs timely appeal the dismissal of their complaint.[3]

¶ 13                                ANALYSIS

¶ 14    Plaintiffs appeal the dismissal of the counts of their complaint for (1) negligence, (2) willful and wanton misconduct under Arizona and Texas law, and (3) loss of child consortium under Arizona law. The parties agree that we are to apply Arizona and Texas law to the substantive issues, but that Illinois law governs procedural issues, such as whether plaintiffs satisfied pleading requirements sufficient to withstand a section 2-615 motion to dismiss. In Illinois, a section 2-615 dismissal motion challenges the legal sufficiency of the complaint based on defects apparent on the face of the pleading. *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶ 13. The relevant inquiry on a section 2-615 motion to dismiss is whether the allegations, viewed in the light most favorable to the nonmoving party, are sufficient to state a claim. *Sheffler v. Commonwealth Edison Co.*, 2011 IL 110166, ¶ 61. A court must accept all well-pled facts in the complaint, as well as any reasonable inferences that flow from those facts, as true. *Cochran v. Securitas Security Services USA, Inc.*, 2017 IL 121200, ¶ 11. A trial court should not dismiss a cause of action under section 2-615 unless it is clear from the pleadings that no set of facts can be proven that would entitle the plaintiff to recover. *Id.* We review the trial court's order dismissing a complaint under section 2-615 *de novo*. *Schweihs v. Chase Home Finance, LLC*, 2016 IL 120041, ¶ 27; *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 361 (2009).

¶ 15                   A. Plaintiffs' Negligence Claim Against Motorola

¶ 16    Plaintiffs first challenge the trial court's dismissal of their negligence claim under section 2-615 for failure to state a claim based on the trial court's conclusion that (1) the exclusive remedy provisions of the Arizona and Texas workers' compensation laws barred their claims, (2) Arizona and Texas do not recognize preconception torts, and (3) causation could not be established.

¶ 17                   1. The Exclusive Remedy Provisions of Arizona and
                          Texas Workers' Compensation Statues

¶ 18    As a threshold issue, Motorola argued in the trial court that the exclusive remedy provisions of the Arizona and Texas workers' compensation laws barred minor plaintiffs' claims because their injuries necessarily flowed from and depended on their fathers' work-related injuries, given that they were not directly exposed to the toxic chemicals in the clean rooms either *in utero* or through their physical presence. Minor plaintiffs countered that, because they suffered their own personal injuries, those injuries were not derivative of any workplace injury to their fathers and the trial court erred in finding that the exclusive remedy provisions barred their negligence claims.

¶ 19    Under Arizona and Texas law, workers' compensation benefits are the exclusive remedy for a work-related injury sustained by an employee. See Tex. Labor Code Ann. § 408.001

---

[3]Plaintiffs do not appeal dismissal of the strict liability and breach of assumed duty counts.

(West 2017) ("Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer or an agent or employee of the employer for the death of or a work-related injury sustained by the employee."); Ariz. Rev. Stat. Ann. § 23-1022(A) (2017) ("The right to recover compensation *** for injuries sustained by an employee or for the death of an employee is the exclusive remedy against the employer or any co-employee acting in the scope of his employment ***.").

¶ 20     Derivative claims, for purposes of work-related injuries, are those that would not exist in the absence of the injury to the employee. Thus, the exclusive remedy provisions of state workers' compensations laws apply to loss of consortium or wrongful death claims, so that such claims cannot be pursued outside the workers' compensation system, but must proceed in tandem with the employee's work-related injury claim. See *Rodriguez v. Naylor Industries, Inc.*, 763 S.W.2d 411, 412 (Tex. 1989) (workers' compensation law barred employee's wife's claim for loss of consortium); *Mardian Construction Co. v. Superior Court*, 754 P.2d 1378, 1381 (Ariz. Ct. App. 1988) (workers' compensation law barred injured spouse's action for loss of consortium in a wrongful death case).

¶ 21     In contrast, the minor plaintiffs' birth defects are injuries personal to them that exist apart from and regardless of a work-related injury sustained by their parent. To illustrate the distinction, assume exposure to the toxic chemicals used by Motorola employees was known by Motorola to cause development of blood clots. An exposed employee-parent is driving his son to school when a blood clot, previously undiagnosed, reaches his brain. The ensuing aneurysm causes the parent to lose consciousness, and an accident ensues in which the child is injured. In this scenario, the child's injuries "derive" from his father's work-related injury in the sense that the blood clot produced by chemical exposure is the cause-in-fact of the accident. But the child's ability to pursue recovery for his own injuries caused by Motorola's negligence is independent of his father's work-related injury and would therefore not be precluded by the exclusive remedy provisions of workers' compensation law.

¶ 22     Motorola does not cite any Arizona or Texas workers' compensation case negating an employer's liability to a nonemployee injured as a result of the employer's alleged negligence, but this issue has been addressed in numerous other jurisdictions. See *Meyer v. Burger King Corp.*, 26 P.3d 925, 930 (Wash. 2001) (exclusive remedy provision did not bar child's claim relating to injuries she sustained *in utero* when mother slipped and fell at work because third parties are not precluded from bringing a claim for injuries suffered due to the employer's negligence); *Omori v. Jowa Hawai'i Co.*, 981 P.2d 714, 715, 718 (Haw. Ct. App. 1999) (action seeking damages for injuries a child sustained as a result of premature birth resulting from his mother's employer's negligence not barred by the exclusive remedy provision because his injuries did not arise out of and in the course of *his* employment); *Snyder v. Michael's Stores, Inc.*, 945 P.2d 781, 782, 786 (Cal. 1997) (exclusive remedy provision did not bar child's injuries sustained *in utero* resulting from her mother breathing carbon monoxide gas in toxic amounts at her workplace because the child did not claim any damages for an injury to her mother, and recovery for her own injuries was not legally dependent on any injury sustained by her mother); *Hitachi Chemical Electro-Products, Inc. v. Gurley*, 466 S.E.2d 867, 869 (Ga. Ct. App. 1995) (exclusive remedy provision did not bar children's claims that were "entirely separate and distinct from any claim which could possibly be asserted by their parents for work-related injuries," and the children were "third-party plaintiffs whose claims are not

contemplated by the Workers' Compensation Act and whose injuries the act was not designed to protect"); *Pizza Hut of America, Inc. v. Keefe*, 900 P.2d 97, 99, 101 (Colo. 1995) (exclusive remedy provision did not bar an action brought on behalf of a child born prematurely and who later died due to her mother's employer requiring her to perform tasks in violation of medical work restrictions because "the child's right of action arises out of and on account of her own personal injuries, and not any personal injury suffered by the mother"); *Jackson v. Tastykake, Inc.*, 648 A.2d 1214, 1216 (Pa. Super. Ct. 1994) (the exclusive remedy provision did not bar a wrongful death action on behalf of a child born when her mother went into premature labor while at work because the claim was for injuries to the child and not the employee-mother); *Thompson v. Pizza Hut of America, Inc.*, 767 F. Supp. 916, 917-18 (N.D. Ill. 1991) (child's action for his personal injuries sustained *in utero* resulting from his mother's exposure to carbon monoxide at her workplace not barred by the exclusive remedy provision because the child's claim was "*based on his own injuries* which occurred while *in utero*" (emphasis in original)).

¶ 23    These cases consistently hold that the respective exclusive remedy provisions of the state's workers' compensation laws do not bar a cause of action brought by an employee's offspring based on injuries he or she sustained independent of any injuries sustained by the employee-mother. In the absence of controlling decisions from Arizona and Texas, we believe that based on the language of the states' workers' compensation statutes, Arizona and Texas courts would adopt the principle that their respective exclusive remedy provisions do not bar family members who are separately and independently injured by the employer's negligence from bringing a claim.

¶ 24    Motorola, however, differentiates between an injury to the child of a male employee and a female employee, asserting that because the child of a male employee can never be *in utero* and directly exposed to toxic chemicals in the workplace, the injury to a male employee's child must necessarily be dependent upon an injury to the employee-father. Motorola argues that such an injury is foreclosed by the exclusive remedy bar or, if there was no detectable injury to the father, the child's claim must fail due to the lack of proximate cause. In other words, for purposes of this appeal, Motorola is willing to concede the viability of a claim for birth defects suffered by the child of a female employee exposed to toxic chemicals in the workplace, while denying the viability of the same claim by a child of a male employee exposed to the same chemicals.

¶ 25    No case from Arizona or Texas recognizes the distinction advanced by Motorola. Plaintiffs' theory is that a child is exposed *in utero* to toxic chemicals through the mother's bloodstream. Whether the chemicals enter the mother's bloodstream as a result of her own workplace exposure or through her husband's workplace exposure seems to us a factual distinction without a legal difference. If, as plaintiffs allege, Motorola could foresee the detrimental effects of workplace exposure to toxic chemicals on the children of female employees, it stands to reason it could foresee that a male employee's impaired sperm could produce the same result. Thus, because, in either scenario, the child's injury is separate and independent from his or her parent's injury, if any, the exclusive remedy provisions of the workers' compensation laws of Arizona and Texas do not bar the claims.

¶ 26    Motorola relies on *Peters*, 2011 WL 4686518, which, as discussed, found that the exclusive remedy provision of Texas workers' compensation law barred the negligence claim of a male-employee's child against his father's employer relating to his father's exposure to

toxins at the workplace. Apart from having no precedential value here, *Peters* is distinguishable because, unlike here, the plaintiff expressly pled an injury to the employee-father. *Id.* at \*3. Nevertheless, even if minor plaintiffs here had pled an injury to their fathers as a result of the chemical exposure, we disagree with Motorola that the *Peters* court properly applied Texas law to find that a child's birth defects allegedly caused by an employer's negligence derives from a work-related injury to the father, and are for that reason, governed by workers' compensation exclusive remedy provisions. *Id.* at \*4. *Peters* draws an artificial distinction between a mother's and father's exposure, asserting that a child *in utero* was directly exposed to the toxins leading to his or her own injury, which the court found was untrue with respect to a male-employee's child. Texas law does not support the distinction advanced in *Peters*. As stated, minor plaintiffs were injured separately and independently from any injury that their fathers did or did not sustain, and they were not seeking damages for any injury sustained by their fathers.

¶ 27    We instead find the reasoning of *Woerth v. United States*, 714 F.2d 648 (6th Cir. 1983), persuasive. The issue in *Woerth* was whether the exclusive remedy provision under the federal equivalent of state workers' compensation law barred a husband from seeking recovery for his own medical expenses and wages after contracting hepatitis from his wife, who contracted the disease through a workplace injury. *Id.* at 650. The court specifically noted that "[w]hile Woerth's hepatitis may derive from his wife as a matter of proximate cause, his cause of action does not." *Id.* The court reasoned that mere transmission of the disease through his spouse did not change Woerth's status from that of any other unrelated, but similarly injured, tort victim. *Id.* The court further explained that because Woerth was not seeking relief relating to his wife's injuries, his claim for his own injuries was not barred by the exclusive remedy provision. *Id.*; see also *Hitachi Chemical Electro-Products, Inc.*, 466 S.E.2d at 868-69 (exclusive remedy provision did not bar children's injuries arising from prenatal exposure to toxic chemicals at their parents' workplace because the children were third-party plaintiffs whose claims were not contemplated by the workers' compensation law); *Trahan v. Trans-Louisiana Gas Co.*, 618 So. 2d 30, 32 (La. Ct. App. 1993) (exclusive remedy provision did not bar wife's claim for injuries she sustained from exposure to hazardous chemicals present on her injured husband's clothing worn while working).

¶ 28    Plaintiffs' complaint indisputably pled a claim for the children's injuries personally sustained separately and independently from any injury to their fathers. See *Cushing v. Time Saver Stores, Inc.*, 552 So. 2d 730, 731-32 (La. Ct. App. 1989) (workers' compensation law addresses injuries to employees and certain losses to family members based on the injuries to the employees, but does not affect the rights of an employee's offspring who was injured on the parent's job site); *Vallery v. Southern Baptist Hospital*, 630 So. 2d 861, 865 (La. Ct. App. 1993) (the only injury referred to in the workers' compensation law is the one to the employee). Because minor plaintiffs seek to recover not based on workplace injuries sustained by their employee-fathers, but for their own personal injuries, the exclusive remedy provisions of the Arizona and Texas workers' compensation laws do not apply.

¶ 29            2. Motorola's Duty to Protect Their Employees and Their Children
                   From the Effects of Toxic Chemicals Used in the Workplace

¶ 30        Minor plaintiffs further claim that the trial court erred in finding that Motorola did not owe them a duty because it misclassified their action as a "preconception tort," which is not recognized as a tort under either Arizona or Texas law.

¶ 31        Although variously formulated, Arizona and Texas, like Illinois, require a negligence plaintiff to plead the existence of a duty, defendant's breach of that duty, and damages proximately caused by the breach. *Lee Lewis Construction, Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2001); *Sanders v. Alger*, 394 P.3d 1083, 1085 (Ariz. 2017); *Schweihs*, 2016 IL 120041, ¶ 31.

¶ 32        Arizona and Texas differ though on the issue of whether the injury for which plaintiff seeks recovery must be forseeable. Under Texas law, the foreseeability of an injury factors into whether a duty exists. *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex. 1998). But unlike Texas, foreseeability of an injury is not a consideration in the duty analysis under Arizona law. *Barkhurst v. Kingsmen of Route 66, Inc.*, 323 P.3d 753, 755 (Ariz. Ct. App. 2014). Rather, to determine whether a tortfeasor owed a duty to the injured party, Arizona requires the existence of a special relationship between the tortfeasor and the injured party (*e.g.*, employer-employee, doctor-patient), or, alternatively, Arizona recognizes a duty when public policy considerations compel that result. *Quiroz v. Alcoa, Inc.*, 382 P.3d 75, 79 (Ariz. Ct. App. 2016); *Guerra v. State*, 348 P.3d 423, 425 (Ariz. 2015); *Gipson v. Kasey*, 150 P.3d 228, 231-32 (Ariz. 2007).

¶ 33        As noted, at least for purposes of this appeal, Motorola concedes the viability of a claim by the offspring of a female employee exposed to toxic chemicals in the workplace. With that context in mind, considering first a duty analysis under Arizona law, strong public policy considerations counsel against allowing a child's negligence case to proceed if toxic exposure was through the mother-employee, but precluding the same cause of action if exposure was through the father-employee. As a matter of public policy, a child born with defects caused by a parent's exposure to toxic chemicals in the workplace is entitled to seek damages regardless of whether the child's mother or father was the employee exposed to the toxic chemicals. Indeed, precluding a child born with defects from proceeding with a negligence claim because his or her father, and not mother, was exposed to the toxins would violate traditional notions of fairness. And Motorola's duty to provide a safe workplace free from harmful toxins extended to all its employees—male and female. For these reasons, Motorola's primary authority on the duty element, *Quiroz*, is not on point. In *Quiroz*, the court held that an employer owed no duty of care to its employee's son who was allegedly exposed to asbestos brought home on his father's clothing because finding a duty under those facts would create a dramatic expansion of liability that would not be compatible with public policy. 382 P.3d at 81. *Quiroz* is distinguishable because, unlike here, public policy considerations associated with an employer treating family members of male and female employees differently were not implicated.

¶ 34        Moreover, under the Arizona Constitution, individuals have a fundamental right to pursue an action against a tortfeasor for injuries sustained. *Hunter Contracting Co. v. Superior Court*, 947 P.2d 892, 894 (Ariz. Ct. App. 1997). Arizona's constitution includes an anti-abrogation clause ("[t]he right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation" (Ariz. Const., art. XVIII, § 6)), which has been interpreted to guarantee an individual a fundamental right to bring a tort

action. See *Kenyon v. Hammer*, 688 P.2d 961, 975 (Ariz. 1984) (*en banc*) (despite bringing an action outside the applicable statute of limitations, a wrongful death claim of a stillborn child not dismissed because the parents had a fundamental right guaranteed by the Arizona Constitution to bring and pursue the action). Based on these public policy considerations, Sarina sufficiently pled the existence of a duty owed to her by Motorola to survive dismissal under section 2-615. Given our finding that a duty under Arizona law exists as a matter of public policy, we need not address the alternative basis of whether Sarina had a sufficient relationship with Motorola, giving rise to a duty owed to her.

¶ 35        Under Texas law, not only do the same public policy considerations favor finding the existence of a duty, but Jeremy sufficiently pled in the complaint that his injuries were foreseeable based on Motorola's knowledge of the risk of injury to its employees' unborn children arising from use of toxic chemicals in clean rooms. Specifically, Jeremy pled that Motorola had duty of reasonable care for the safety and protection of both its employees and their unborn children due to exposure to toxic chemicals in the workplace. According to the complaint, the duty of reasonable care included warning employees about the risk of injury (including birth defects) to their unborn children resulting from exposure to toxic chemicals. Jeremy also pled in detail that the risk of injury to Motorola's employees' unborn children was foreseeable, based on (i) studies known to Motorola linking the toxic chemicals to adverse reproductive outcomes and (ii) warnings to the same effect disseminated by industry associations and provided to Motorola. Jeremy further pled that Motorola provided the toxic chemicals for use in the clean rooms despite knowing that exposure to those chemicals dramatically increased the likelihood of injury to both its employees and their unborn children. And most importantly, Jeremy alleged that Motorola tracked the incidence of adverse reproductive outcomes to its employees' offspring, which demonstrated Motorola's awareness and knowledge of the risk of injury to the unborn children. Consequently, taking the complaint's allegations as true, Jeremy pled sufficient facts not only supporting the existence of a duty in that Motorola had an obligation to provide employees with a working environment free of toxic chemicals and to warn employees of the risk of birth defects to their offspring, but also demonstrating that injury to its employees' unborn children was foreseeable.

¶ 36        Because we find that plaintiffs alleged facts sufficient to support the existence of a duty under both Arizona and Texas law, we need not address plaintiffs' alternative theory that Motorola assumed a duty to protect its employees and their offspring.

¶ 37        We reject Motorola's "Pandora's box" argument. Finding that Motorola owes a duty to plaintiffs does not expand its existing duties to its employees or create a new duty. Rather, in this context, Motorola's duty to protect its employees is co-extensive with a duty to protect its employees' unborn children.

¶ 38        Motorola contests the viability of minor plaintiffs' duty allegations, asserting that regardless of the sufficiency of the factual allegations, no duty exists because Texas and Arizona do not recognize preconception torts, *i.e.*, injuries resulting from preconception exposure to toxic chemicals. Regarding Arizona law, Motorola relies on *Rodriguez v. Intel Corp.*, C.A. No. N11C-08-029 JRJ, 2014 WL 605472 (Del. Super. Ct. Jan. 29, 2014), an unpublished case authored by the same Delaware trial court judge that decided *Peters*. In *Rodriguez*, the court held that a child could not plead a cause of action relating to her birth defects purportedly caused by her father's exposure to toxic chemicals in a clean room because her claim asserted a preconception tort, which the court deemed was not a recognized tort in

Arizona. *Id.* at \*5. Again, apart from having no precedential value, we are not persuaded that *Rodriguez* is a correct statement of Arizona law because fundamental tort law does not prohibit imposing liability on a tortfeasor for conduct that causes an injury regardless of whether that conduct occurred pre-conception and the resulting injury manifested after the child's conception and birth. For this same reason, we are likewise not persuaded by Motorola's reliance on *Peters* as to Texas law.

¶ 39    Under Arizona and Texas law, it is irrelevant from a negligence perspective whether minor plaintiffs' injuries arose from exposure to toxic chemicals transmitted by their fathers' sperm or whether instead the exposure occurred *in utero* during their mothers' employment at Motorola. Under both scenarios, the children allegedly have been injured from their parents' exposure to toxic chemicals in Motorola's clean rooms as a result of Motorola's alleged negligence. Adopting Motorola's position would bar relief for its *preconception* negligence even though, according to the complaint's allegations, the risk of harm to unborn children was known to Motorola and that same conduct would be actionable by a child exposed *in utero* who was later born with birth defects.[4] Motorola's alleged negligent conduct occurred regardless of whether the injury did not manifest until the child's birth. To preclude a cause of action for negligence based solely on the fact that the negligence occurred before plaintiffs' conception would leave a party with no recourse for injuries caused by another.[5] Applying Arizona and Texas negligence law, we find that dismissal of the complaint on the basis that minor plaintiffs were pursuing a new, unrecognized tort was improper. The minor plaintiffs' cause of action was for simple negligence, and the duty owed, foreseeability (under Texas law), and proximate cause was exactly the same regardless of whether the employee was male or female, pregnant or not. Consequently, minor plaintiffs properly pled a negligence claim.

---

[4]In *Taylor v. Cutler*, 703 A.2d 294, 301, 303 (N.J. Super. Ct. App. Div. 1997), the court identified the key consideration in determining whether a duty exists in preconception tort cases is the tortfeasor's knowledge of the risk created by his or her tortious conduct rather than the status of the person who is injured. By way of example, the court explained that in toxic tort cases stemming from polluted ground water, a tort duty is imposed on the contaminator when the soil became contaminated because the tortfeasor either knew or should have known the risk created by the wrongful discharge of pollutants into the environment. *Id.* at 303. The tort duty extends to plaintiffs born and unborn at the time of contamination and who sue for injuries manifesting years later when the ground water becomes polluted. *Id.* Likewise, to support recognition of a preconception tort in *Lough v. Rolla Women's Clinic, Inc.*, 866 S.W.2d 851, 854 (Mo. 1993) (*en banc*), the court hypothesized that it would be "ludicrous" to suggest that only a mother would have a cause of action against a builder based on a negligently constructed balcony that gave way when the mother and her one-year-old child stepped onto the balcony, but no duty of care extended to the child because the child was not conceived at the time of the negligent conduct. Similarly, our supreme court in *Renslow v. Mennonite Hospital*, 67 Ill. 2d 348, 357 (1977), found it illogical to bar recovery based on a negligent act occurring before conception where the defendant would be liable for the same conduct had the child, unbeknownst to him, been conceived before his negligent act.

[5]We find the *Lough* court's rejection of "Pandora box" arguments arising from recognition of preconception misconduct persuasive. In *Lough*, the court reasoned that such arguments were pure speculation and there was no evidence indicating that the states permitting preconception torts "have been swallowed up by the kind of apocalypse of liability actions" envisioned by defendants. 866 S.W.2d at 854.

¶ 40                    3. The Proximate Relationship Between the Minor Plaintiffs'
                            Birth Defects and Their Fathers' Workplace Exposure

¶ 41       Plaintiffs claim that they sufficiently pled proximate cause of the minor's injuries by asserting that exposure to the toxic chemicals in Motorola's clean rooms compromised their fathers' reproductive systems, which in turn caused their birth defects.

¶ 42       Proximate cause embodies two distinct concepts: cause-in-fact and legal cause. *Turcios v. DeBruler Co.*, 2015 IL 117962, ¶ 23. Cause-in-fact includes both the traditional "but for" test and the "substantial factor" test. *Id.* Under the "but for" test, a defendant's conduct is not the cause of an injury if the injury would have occurred absent the conduct. *Id.* Under the "substantial factor" test, the defendant's conduct is a cause of an injury if it was a material element and a substantial factor giving rise to the injury. *Id.* Legal cause, on the other hand, assesses foreseeability and the relevant inquiry is whether the injury is the type of injury that a reasonable person would see as a "likely result" of the defendant's conduct. *Id.* ¶ 24. Motorola sought dismissal asserting plaintiffs failed to establish that Motorola's conduct was the cause-in-fact of their injuries.

¶ 43       The original complaint alleged that exposure to the toxic chemicals proximately caused a direct (albeit transitory) injury to the fathers' reproductive systems, but plaintiffs later omitted any allegation claiming an injury to the fathers, apparently, as noted, to avoid the workers' compensation exclusive remedy argument. Motorola claims that because minor plaintiffs did not allege an injury to their fathers cognizable under state law, they cannot establish that their injuries were proximately caused by their fathers' exposure to toxic chemicals in the workplace. Motorola essentially argues that because minor plaintiffs disclaim any injury to their fathers, they cannot establish proximate cause for their own injuries.

¶ 44       We are not persuaded by Motorola's argument because, importantly, the lack of a manifest injury to minor plaintiffs' fathers under the workers' compensation laws does not automatically negate proximate cause for negligence pleading purposes relating to minor plaintiffs' separate and independent injuries. Motorola infers that because minor plaintiffs did not allege an injury to their fathers, then it necessarily follows that their fathers' exposure to the toxic chemicals in the clean rooms could not be the proximate cause of their own injuries. But Motorola is drawing inferences from the pleadings against minor plaintiffs, an improper exercise on a motion to dismiss where all reasonable inferences must be indulged in favor of the non-moving party. *Sheffler*, 2011 IL 110166, ¶ 61.

¶ 45       Moreover, pleading an injury to their fathers falling within the definition of "injury"[6] under the workers' compensation laws would not establish the *only* possible causal link between their fathers' exposure and minor plaintiffs' injuries. See *Seef v. Ingalls Memorial Hospital*, 311 Ill. App. 3d 7, 20-21 (1999) (recognizing the principle that an injury may have more than one proximate cause). Indeed, minor plaintiffs' well-pled allegations and the related reasonable inferences assert that their fathers served as a conduit in the chain of causation between Motorola's negligent conduct and their resulting injuries. Evidence refuting any

---

[6]Texas workers' compensation law defines injury as "damage or harm to the physical structure of the body and a disease or infection naturally resulting from the damage or harm." Tex. Labor Code Ann. § 401.011(26) (West 2017). Arizona workers' compensation law does not define "injury," but case law defines "injury" as an "organic or structural change in the body." *Phelps Dodge Corp. v. Cabarga*, 285 P.2d 605, 608 (Ariz. 1955).

negative impact or breaking the causal link between their fathers' exposure to the toxic chemicals and the minor plaintiffs' birth defects is not suited for resolution on a motion to dismiss. Importantly, at this juncture in the proceedings, the relevant inquiry for negligence pleading purposes is whether minor plaintiffs pled sufficient facts demonstrating that their fathers' prolonged exposure to toxic chemicals in Motorola's clean rooms proximately caused their birth defects. And whether their fathers also sustained a work-related injury under the workers' compensation laws is irrelevant to minor plaintiffs' negligence cause of action.

¶ 46   Turning to the complaint, plaintiffs sufficiently pled proximate cause because their allegations detailed a causal link between Motorola's wrongful conduct and the children's injuries. Specifically, plaintiffs alleged that the fathers worked in close proximity for a prolonged period in Motorola's clean rooms using toxic chemicals that Motorola knew were hazardous. Plaintiffs asserted that Motorola monitored its employees' medical conditions, including their reproductive health, and tracked the occurrence of adverse reproductive outcomes among its employees' offspring, thus rendering any potential adverse reproductive outcomes to their employees and offspring foreseeable. Plaintiffs also alleged that although Motorola implemented industrial hygiene policies and procedures, the policies and procedures were inadequate to minimize or prevent their employees' exposure to the toxic chemicals, and that exposure led to their birth defects. Construing the allegations in the complaint in the light most favorable to plaintiffs, we find that plaintiffs sufficiently pled that the toxic chemicals in Motorola's clean rooms were the cause-in-fact of the minors' injuries and that those allegations were sufficient to withstand Motorola's section 2-615 motion to dismiss.

¶ 47                    B. Plaintiffs' Claims for Willful and Wanton Misconduct

¶ 48   The trial court also dismissed minor plaintiffs' willful and wanton misconduct claim. The substantive law in both Arizona and Texas recognizes willful and wanton misconduct as a form of aggravated or gross negligence. See *Williams v. Thude*, 934 P.2d 1349, 1351 (Ariz. 1997) (*en banc*) (recognizing willful and wanton misconduct as a form of aggravated negligence); *BP Oil Pipeline Co. v. Plains Pipeline, L.P.*, 472 S.W.3d 296, 312 (Tex. App. 2016) (recognizing willful and wanton misconduct is equivalent to gross negligence).

¶ 49   To state a cause of action for aggravated or gross negligence (willful and wanton misconduct), a plaintiff must plead the elements of negligence together with facts establishing that the negligent conduct created an extreme risk of harm to others and that the defendant knew of the extreme risk but proceeded anyway. *Columbia Medical Center of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 248 (Tex. 2008); *Lee Lewis Construction, Inc. v. Harrison*, 70 S.W.3d 778, 784-86 (Tex. 2001); *Arizona Independent Redistricting Comm'n v. Brewer*, 275 P.3d 1267, 1276 (Ariz. 2012); *DeElena v. Southern Pacific Co.*, 592 P.2d 759, 762-63 (Ariz. 1979) (*en banc*). We find that plaintiffs' complaint alleged multiple factual bases supporting their willful and wanton misconduct claim against Motorola. For example, the minor plaintiffs pled that Motorola willfully and with a reckless disregard for safety (1) "altered the methods for collecting and/or measuring levels of chemical products and substances in the air of its wafer processing areas in order to obtain data showing lower exposure levels when it knew, or reasonably should have known, that such altered methods resulted in inaccurate data"; (2) "failed and/or refused to design, approve and/or implement reasonable and proper chemical handling and disposal policies and procedures to protect semiconductor workers, including the EMPLOYEE PARENTS, and their offspring from dangers associated with exposure to some

- 13 -

or all of the aforesaid chemical products and substances"; and (3) "failed and/or refused to comply with reasonable standards and regulations designed to protect the health and safety of those persons, including EMPLOYEE PARENTS and his/her unborn child, who would foreseeably be exposed to some or all of the aforesaid chemical products and substances." Assuming the truth of these allegations, as we must, they are sufficient to state a claim for willful and wanton misconduct.

¶ 50                              C. Parental Loss of Consortium Claim

¶ 51     Finally, the parties agree that parental loss of child consortium is not recognized as a viable cause of action in Texas (*Roberts v. Williamson*, 111 S.W.3d 113, 120 (Tex. 2003)), but such a claim is viable in Arizona (*Howard Frank, M.D., P.C. v. Superior Court*, 722 P.2d 955, 961 (Ariz. 1986) (*en banc*)). Parental loss of child consortium is a derivative cause of action based on a recognizable injury to a child. See *id.* Having found that Sarina properly pled a cause of action for negligence, we find that her parent's derivative action incorporated sufficient allegations, demonstrating that Motorola's wrongful conduct interfered with and compromised the parent-child relationship, to withstand Motorola's motion to dismiss.

¶ 52                                         CONCLUSION

¶ 53     We express no opinion on the likelihood of success on the merits of plaintiffs' claims, but conclude that, construing the allegations in the complaint in a light most favorable to plaintiffs, the claims for negligence and willful and wanton misconduct under both Arizona and Texas law and the claims for loss of child consortium under Arizona law were sufficiently pled to withstand a section 2-615 motion to dismiss. The allegations in the complaint set forth a viable cause of action for negligence. It also cannot reasonably be argued that Motorola was unaware or uninformed of the basis for the claims against it. Because we conclude that the complaint was sufficient to survive Motorola's motion to dismiss, we need not separately address plaintiffs' argument regarding denial of leave to appeal.

¶ 54     We reverse the trial court's dismissal of plaintiffs' claims for negligence and willful and wanton misconduct under Arizona and Texas law and the claims for loss of child consortium under Arizona law. Because parental loss of child consortium is not a valid cause of action in Texas, we affirm dismissal of that count.

¶ 55     Affirmed in part and reversed in part.

¶ 56     Cause remanded.