NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JANIECE R. GILLIS, *Plaintiff/Appellant*,

*v.*

NORTHSAND, LLC, et al., *Defendants/Appellees*.

No. 1 CA-CV 21-0397
FILED 4-26-2022

Appeal from the Superior Court in Maricopa County
No.  CV2019-005893
The Honorable Andrew J. Russell, Judge

**VACATED AND REMANDED**

COUNSEL

Riviere Law Group, PLLC, Phoenix
By Roger W. Riviere, Daniel T. Benchoff
*Counsel for Plaintiff/Appellant*

Jones, Skelton & Hochuli, P.L.C., Phoenix
By J. Gary Linder, Petra L. Emerson, Kimberly K. Page
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge Michael J. Brown joined.

---

**T H U M M A**, Judge:

¶1 Plaintiff Janiece Gillis appeals from the entry of summary judgment on her negligence and premises liability claims against defendants Northsand, LLC (Sandbar), and Justin Jereb. Because the record presented does not support entry of summary judgment, the ruling is vacated, and this matter is remanded for further proceedings consistent with this decision.

## FACTS AND PROCEDURAL HISTORY

¶2 Northsand operates Sandbar Mexican Grill in Phoenix. One day in July 2018, Gillis and about 15 friends and family arrived at the Sandbar around 6:00 p.m. for her "birthday happy hour." The group went to the Sandbar patio to drink and eat appetizers. Later, they saw a "huge dog" and its owners on the patio. Jereb, Sandbar's manager on duty who was circulating around the patio "[e]very five minutes," noticed the dog, which "was sitting. He looked hot. He was panting." Jereb agreed the dog "was very big, about 110 pounds" and looked like a blue nose pit bull.

¶3 After sunset and after spending several hours on the patio, Gillis approached the dog. Gillis, who is five feet tall, spoke with the dog's owners, who said he was friendly. Precisely what happened next is disputed. After first petting the dog, defendants claim Gillis "began to pull on the dog's head and ears, with her face nearly pressed to the dog's face," and the dog bit her. Gillis testified that, while she was standing and petting the dog, the dog first licked and then bit her: "it was like two licks and then a super fast bite. It wasn't even a growl, a bark. It was just lick, lick, and then bite." Gillis was seriously injured and took an Uber to the hospital, where she was admitted. The next day, she underwent surgery involving 40 stitches on her face.

¶4 Sandbar's video tape system captured the incident, and the time stamp shows the dog biting Gillis at 10:54 p.m. Gillis later testified that her Uber receipt showed the ride beginning at 10:29 p.m. A Sandbar waiter testified the incident occurred at or just before 10:00 p.m. Jereb testified the video time stamp likely was incorrect, estimating the incident occurred around 8:00 p.m.

¶5 Sandbar had a policy regarding dogs on the patio. Although dogs were allowed during the day, at night, the policy changed. The Sandbar lead server, who had worked there for six years, testified management had implemented a "no dogs allowed" on the patio policy "after 10:00 P.M." He added "after 10:00 P.M., it's 21 and up [on the patio] and it kind of becomes more of a party scene. The music gets a little bit louder, and [Sandbar] didn't want any of that commotion around." Jereb confirmed the Sandbar policy that no non-service dogs were allowed on the patio after 10:00 p.m., adding the prohibition was "just because it's . . . more of a club atmosphere, I guess, if you will."

¶6 In the commotion after the dog bit Gillis, the dog's owners quickly paid their Sandbar bill in cash and left. Notwithstanding the video tape of the incident, the dog's owners have never been located.

¶7 In March 2019, Gillis filed this lawsuit. As applicable here,[1] Gillis alleged premises liability and negligence claims against Sandbar and Jereb, in his individual capacity. Defendants moved for summary judgment, and after full briefing and oral argument, the court granted the motion. As to Jereb, the court found that, individually, he owed Gillis no duty. As to Gillis' premises liability claim, the court found that Jereb was neither the property owner nor the tenant and the court found "no case where a plaintiff maintained a premises liability claim against someone in Jereb's position."

¶8 As to Sandbar, the court noted it had a duty to keep the premises (including the patio) reasonably safe for invitees, but that Sandbar was not an insurer "liable for every injury suffered on the business's premises." Although acknowledging the "reasonably safe" issue typically would be a jury decision, the court noted Gillis provided no evidence

---

[1] Gillis named fictitious defendants as well as the operator of the shopping mall where Sandbar is located. None of those defendants are parties to this appeal. Gillis also alleged negligence per se claims against Sandbar and Jereb, which the superior court rejected on summary judgment, a ruling Gillis does not challenge on appeal.

suggesting that the dog was dangerous, and no one had actual knowledge or notice that the dog would bite Gillis. Finding that the dog was only at Sandbar for a short period of time, the court added that even if the dog was a dangerous condition, "such condition did not exist 'for such a length of time that in the exercise of ordinary care" Sandbar should have known about and remedied the condition.

**¶9** Gillis unsuccessfully sought reconsideration, and this appeal followed. This court has jurisdiction over Gillis' appeal pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1) and -2101(A)(1) (2022).[2]

## DISCUSSION

**¶10** This court reviews the entry of summary judgment de novo, "viewing the evidence and reasonable inferences in the light most favorable to the party opposing the motion," *Andrews v. Blake*, 205 Ariz. 236, 240 ¶ 12 (2003), to determine "whether any genuine issues of material fact exist," *Brookover v. Roberts Enters. Inc.*, 215 Ariz. 52, 55 ¶ 8 (App. 2007). This court will affirm the entry of summary judgment if it is correct for any reason. *Hawkins v. State*, 183 Ariz. 100, 103 (App. 1995). When uncontroverted, "facts alleged by affidavits attached to motions for summary judgment may be considered as true." *Portonova v. Wilkinson*, 128 Ariz. 501, 503 (1981).

## I. The Superior Court Properly Found Jereb Did Not Owe a Duty to Gillis.

**¶11** Although stated in different ways at times, for her premises liability and negligence claims, Gillis was required to plead and prove (1) duty; (2) breach of duty; (3) cause-in-fact; (4) legal (or proximate) cause and (5) resulting damages. *See, e.g.*, *Gipson v. Kasey*, 214 Ariz. 141, 143 ¶ 9 (2007); *Alcombrack v. Ciccarelli*, 238 Ariz. 538, 540 ¶ 6 (App. 2015); *Boisson v. Ariz. Bd. of Regents*, 236 Ariz. 619, 622 ¶ 5 (App. 2015) (citing cases). Whether a duty exists is a matter of law. *Alcombrack*, 238 Ariz. at 540 ¶ 6. The question of duty focuses on the relationship, if any, between the plaintiff and the specific defendant. *Gipson*, 214 Ariz. at 145 at ¶¶ 18-19.

---

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated. Gillis does not appeal the negligence per se arguments.

¶12 Gillis sued Jereb in his individual capacity, not as an employee or agent of Sandbar. The superior court found that Sandbar owed Gillis a duty as an invitee, but that Gillis "has not identified any duty that Jereb, as an individual, owed to her." Gillis challenges that ruling on appeal.

¶13 Citing Arizona authority, Gillis correctly argues that an employer like Sandbar may be held liable for the negligent acts of its employees "under the doctrine of respondeat superior." *See Engler v. Gulf Interstate Eng'g, Inc.*, 230 Ariz. 55, 57 ¶ 9 (2012). But Gillis then argues, without any supporting authority, that because Sandbar owed a duty to her, that "duty should be imputed to Sandbar's employees and agents such as Jereb." Respondeat superior, as its name suggests, holds an employer responsible for negligent acts of its employees, but it does not result in an employee being responsible for the negligent acts of an employer. And there is no allegation that Jereb was acting outside of the scope of his employment. Accordingly, the superior court properly concluded that Jereb did not owe a duty to Gillis in his individual capacity.

## II. The Record Presented Does Not Show Gillis' Claims Against Sandbar Fail as a Matter of Law.

¶14 Gillis argues summary judgment was not appropriate on her negligence and premises liability claims against Sandbar. Gillis claims that "[t]he question of whether Sandbar was negligent or made and kept its premises safe for customers when it allowed a 110-pound Pitbull/mastiff on the patio at 10:54 p.m. is for the jury." She further argues that whether the owner of a premises exercised the necessary care to keep the premises in a reasonably safe condition for invitees is a question of fact for the jury.

¶15 Although not an insurer of the safety of the patio, Sandbar had "an affirmative duty to make and keep [its] premises reasonably safe for customers." *Contreras v. Walgreens Drug Store No. 3837*, 214 Ariz. 137, 138 ¶ 7 (App. 2006); *accord Preuss v. Sambo's of Ariz., Inc.*, 130 Ariz. 288, 289 (1981) (noting business "is not an insurer of their safety and is not required to keep the premises absolutely safe"). Although citing no Arizona premises liability dog bite cases, the parties on appeal (and the superior court in its ruling) cite to slip-and-fall cases as providing the applicable legal analysis. As set forth in *Walker v. Montgomery*, 20 Ariz. App. 255 (1973), and later adopted in *Preuss*,

[T]he general proposition [is] that in order to impose liability on the proprietor for injuries sustained by an invitee, the plaintiff must prove either, 1) that the foreign substance or dangerous condition is the result of defendant's acts or the acts of his servants, or 2) that defendant had actual knowledge or notice of the existence of the foreign substance or dangerous condition, or 3) that the condition existed for such a length of time that in the exercise of ordinary care the proprietor should have known of it and taken action to remedy it (i.e., constructive notice).

*Walker*, 20 Ariz. App. at 258, *quoted in Preuss*, 130 Ariz. at 289.

¶16     The superior court rejected all three alternatives as imposing a duty on Sandbar. Focusing on the third alternative, the court concluded that, even if it constituted a dangerous condition, "the dog was only at Sandbar for a short period of time." The record presented, however, contains disputed issues of material fact about the application of this third alternative.

¶17     Jereb admitted to seeing the "very big" dog, weighing "about 110 pounds" on the patio before it bit Gillis. Jereb testified that the dog looked like a pit bull and "looked hot. He was panting." The precise time the dog and its owners arrived at Sandbar is disputed. From the facts presented, however, a jury could conclude that the dog had been on the patio for thirty minutes to an hour before the incident. Moreover, Sandbar's policy prohibited non-service dogs on the patio after 10:00 p.m. According to Jereb, this policy was given a concern that too much stimuli in this nightclub atmosphere might cause a dog to act unpredictably. Given Sandbar's admission that the patio became a "party scene" after 10:00 p.m., and non-service dogs were not allowed, a jury could determine that the policy was to prevent a dangerous condition for patrons on the patio.

¶18     Although the parties dispute when the dog bit Gillis, a jury could conclude she was bitten nearly an hour after dogs were not allowed by Sandbar policy. And given Jereb's testimony that he walked around the patio "every five minutes" on the night of the incident, a jury could conclude that Sandbar (through Jereb) had knowledge of the dog being on the patio after 10:00 p.m. contrary to Sandbar's policy. These disputed issues of material fact relevant to this third *Walker* alternative preclude

entry of summary judgment. *See Tom v. S.S. Kresge Co., Inc.*, 130 Ariz. 30, 33 (App. 1981) (although primarily addressing the first "mode of operation rule" *Walker* alternative, which contemplates "the reasonable anticipation of patrons' carelessness under the circumstances," also concluding summary judgment was improper under the third *Walker* alternative where "a reasonable inference from" the record could establish that the defendant "in the exercise of ordinary care, should have known of the condition," adding that "where the facts of what caused the condition are difficult to ascertain, issues of negligence are not proper subjects for summary judgment").

**¶19**　　　　Sandbar counters that the policy of prohibiting non-service dogs on the patio after 10:00 p.m. is "not evidence of industry standards and the record contains no admissible standard-of-care expert opinion." Sandbar cites no authority for these propositions, which are not dispositive in any event. Gillis argues the policy is evidence that Sandbar knew that allowing non-service dogs on the patio after 10:00 p.m. could create a dangerous condition, but it failed to act on that knowledge by failing to comply with its own policy, not that the policy was an industry standard. As to Sandbar's expert evidence argument, Gillis tendered an opinion by Dr. Richard Polsky that the dog's presence constituted an unreasonably dangerous condition. On appeal, Sandbar claims this expert testimony report is inadmissible. Sandbar, however, did not object to the evidence when Gillis offered it to the superior court, meaning that argument is waived. *See* Ariz. R. Civ. P. 7.1(f)(3)(A). Moreover, the record presented does not support Sandbar's argument that the superior court found the report inadmissible. No objection was made to the report and the superior court did not state it was excluding the report.

**¶20**　　　　Other authorities cited by Sandbar do not negate these disputed issues of material fact. This is not a statutory claim against the owner of a dog, negating the applicability of *Spirlong v. Browne*, 236 Ariz. 146 (App. 2014) (construing A.R.S. §§ 11-1001, et seq.). This case also does not turn on "the appropriate standard of care," distinguishing *Nunez v. Pro. Transit Mgmt.*, 229 Ariz. 117 (2012). And there is no claim that duty here turns on foreseeability. *See Quiroz v. Alcoa Inc.*, 243 Ariz. 560, 565 ¶ 12 (2018) (citing *Gipson v. Kasey*, 214 Ariz. 141 (2007)). Nor has Sandbar shown that the standards applied here were abrogated or otherwise altered by *Orme Sch. v. Reeves*, 166 Ariz. 301 (1990).

**¶21** To be sure, it is unknown at this point what a jury would make of these disputed material facts. But summary judgment is not appropriate if there are disputed issues of material fact. Here, viewing the facts in the light most favorable to Gillis, a trier of fact could find for the version of the facts she presents and, on those facts, could find for Gillis on her negligence and premises liability claims. Accordingly, summary judgment on those claims is not appropriate.

## CONCLUSION

**¶22** The superior court's finding that Jereb did not owe Gillis a duty is affirmed. The entry of summary judgment for Sandbar on Gillis' negligence and premises liability claims is vacated and this matter is remanded for further proceedings.



AMY M. WOOD • Clerk of the Court
FILED: AA

8